## State of Connecticut *v.* LeRoy Nash

King, Murphy, Shea, Pastore and Leipner, Js.

Argued June 6—decided July 19, 1962

LeRoy Nash, pro se, the appellant (defendant).

John F. McGowan, assistant state's attorney, with whom, on the brief, was Otto J. Saur, state's attorney, for the appellee (state).

KING, J. On July 9, 1947, LeRoy Nash, the defendant, was sentenced to prison for a term of not more than thirty years nor less than twenty-five years, after a trial to the jury and a verdict of guilty on an information charging him with assault with intent to murder Eugene Melvin, a captain in the Danbury police department, on May 26, 1947. See General Statutes § 53-12. No appeal was taken, and the defendant began the service of his sentence at the Connecticut State Prison, at Wethersfield.

I

On November 29, 1958, a little over eleven years after the rendition of judgment against him, the defendant filed what purported to be an appeal to this court. In it, he sought a reversal of the 1947 judgment of conviction and a new trial. The grounds of appeal alleged were a denial of the right to be heard and a denial of the right to obtain or contact counsel of his choice. The papers in the so-called appeal were returned to the defendant by the clerk

of this court, who suggested that they be sent to the Superior Court in Fairfield County, where the defendant was originally convicted. The defendant did so send them, but what, if any, action the Superior Court took on them does not appear in the present record.

After subsequent maneuvers in the state and federal courts, Nash instituted in the United States District Court for the district of Connecticut an action of habeas corpus against Mark S. Richmond as warden of the Connecticut State Prison, in which Nash was serving not only his sentence under the 1947 conviction but two subsequent sentences imposed after he pleaded guilty to charges of attempted escapes. *United States ex rel. Nash* v. *Richmond,* Civil No. 7718, D. Conn., Sept. 12, 1959. The District Court found as a fact, on the basis of testimony by Nash, that he had attempted to send a letter to the Connecticut Supreme Court of Errors, as a notice of appeal (Practice Book §§ 378, 414), within one week of his 1947 conviction; that the mail clerk at the prison returned the letter to him; and that Nash then wrote to a Bridgeport attorney, asking for assistance on the appeal, but the letter was received too late for an appeal to be taken. The court further found that Nash had become a pauper, unable to pay appellate fees, costs and expenses, and that an application for a writ of habeas corpus which he made to the Superior Court in Hartford County on December 23, 1958, on the ground that he was illegally denied a right to appeal the 1947 conviction, was returned to him by the Superior Court for lack of an entry fee, and consequently was not determined.

On the basis of these findings, the District Court concluded that (1) Nash had been illegally deprived

of the right of appeal in 1947 by the action of the mail clerk at the prison; (2) the failure to grant him an appeal was a denial of due process; (3) it would also be a violation of due process for the state to require filing fees, costs and bonds as a prerequisite to an appeal by Nash since he was, at least at that time, a pauper; and (4) Nash had exhausted his state remedies. Judgment was accordingly rendered, on September 12, 1959, "discharging Nash from custody unless within a reasonable time the filing of appeal by him to the Supreme Court of Errors from the 1947 conviction is permitted, and reasonable opportunity given thereafter for presenting the case on appeal." The present appeal from the 1947 conviction was afforded Nash pursuant to that mandate.

The record in this case was prepared in accordance with the wishes of the defendant, as set forth in a motion filed by him on January 8, 1962. His original brief and his reply brief were printed as he wrote them. Neither the record nor the briefs in any way support the defendant's claims of error in the 1947 trial. Indeed, the record and his original brief deal solely with matters concerning the prosecution of this appeal and in no way concern the 1947 trial, and the defendant himself so claims at one point in his reply brief. At another point in that brief, however, he claims that (a) at the 1947 trial the public defender was forced on him as counsel, over his protests to the presiding judge that he wished to hire private counsel at his own expense, and (b) he was not visited or interviewed by the public defender until just before the trial and therefore was inadequately represented by the public defender at that trial.

The defendant's mere assertion of these claims

in no way establishes their validity. A defendant cannot make a claim of fact and then call on the state affirmatively to disprove it. If the record fails to indicate that any such thing ever occurred, there would be nothing which the state could point to which would affirmatively show that it did not occur. There is no presumption of error in the trial of a case. An appellant, to substantiate the claims he makes, must bring before this court something more than his mere uncorroborated statement. See *United States* v. *Morgan,* 346 U.S. 502, 512, 74 S. Ct. 247, 98 L. Ed. 248. The defendant made no effort to obtain a finding from the trial judge as to the true facts with respect to the matters in the 1947 trial claimed as error. An inspection of the voluminous file in this case discloses that the making of any finding was opposed by the defendant in a paper filed by him under date of December 29, 1961, entitled "Defendant's Answer to the State's 'Motion for Extension of Time [to File a Counterfinding]' dated Dec. 20, 1961." In lieu of a finding, the defendant preferred to, and did, write a long "Statement of Facts," which at his request has been printed in the record. This statement is nothing more than his unsupported claims as to the facts. It in nowise establishes them. His assignments of error deal solely with matters concerning the perfecting of this appeal. At the argument before this court, he stated that these assignments of error embraced his claims of error on this appeal. There is nothing in the record which supports any of his claims of error concerning the 1947 trial.

## II

Ordinarily, the foregoing discussion would, and perhaps it should, be decisive of this appeal, ad-

versely to the defendant. We cannot, however, overlook the fact that the record was prepared according to the wishes of the defendant himself, and that in spite of his prior experience in criminal matters he was, after all, a layman. Consequently, we examine the assignments of error and claims by him with respect to the perfecting of this appeal to determine whether there is anything in them which might affect this appeal from the 1947 judgment.

The only assignments of error of this character concern the claim that the defendant was improperly denied the full assistance of counsel in the preparation of this appeal. On October 6, 1959, the defendant applied to the Superior Court for relief from the payment of expenses in connection with the prosecution of this appeal and for a waiver of the requirement of a bond for costs. After a hearing on October 15, 1959, the Superior Court, on October 27, 1959, directly granted so much of the defendant's motion as sought to have the state pay the expense of printing his appeal briefs. The defendant was also absolved from any other costs, expenses and obligations incident to the appeal by an order authorizing the public defender to enter in the appeal for the sole purpose of relieving the defendant of any such payments, expenses or obligations. As the record shows, the order was effective and the public defender filed the appeal on January 22, 1960. The only reason the services of the public defender were thus limited was that the defendant had the right, which he insisted on exercising, of refusing to permit the public defender to represent him. *Moore* v. *Michigan,* 355 U.S. 155, 161, 78 S. Ct. 191, 2 L. Ed. 2d 167; *Carter* v. *Illinois,* 329 U.S. 173, 174, 67 S. Ct. 216, 91 L. Ed. 172.

In an earlier motion, dated March 6, 1959, in

connection with the purported appeal of November 29, 1958, Nash had asked that the public defender be assigned to prepare and present his appeal. At the hearing on October 15, 1959, on the motion of October 6, 1959, Nash took the position that he would not accept the assistance of the public defender, because most public defenders "have no loyalty to the defendant" and he did not want to take any chances. It may be not without significance that between the dates of the two inconsistent motions Nash had had the opportunity of reading the opinion of this court in *State* v. *Reid,* 146 Conn. 227, 232, 149 A.2d 698, handed down March 4, 1959, pointing out situations in which Connecticut would appoint, and has appointed, a special public defender for an accused. However this may be, Nash, in subsequent motions, attacked the loyalty and competency of the particular public defender whose services were being offered him for the prosecution of this appeal, as well as that of public defenders in general. In February, 1960, he wrote the clerk of the Superior Court that a member of the bar whom he, the defendant, had named in a previous letter was "no longer acceptable" and that he would prefer to have assigned another member of the bar, whom he named. Afterwards, he attempted to induce the state to appoint a special public defender from a list, which he submitted, of three members of the bar. The court correctly held that his unsubstantiated attacks on the two public defenders concerned in his case, and on public defenders in general, were without merit and that the appointment of a special public defender to represent him was not justified.

The defendant's claim that improper limitations were put on the power of the public defender to represent him are inconsistent with his repudiation

of the services of the public defender and are without merit. The constitutional right of an accused in a criminal case to have the assistance of counsel may be waived, if it is waived intelligently, understandingly and in a competent manner. *Moore* v. *Michigan,* 355 U.S. 155, 161, 78 S. Ct. 191, 2 L. Ed. 2d 167; *Uveges* v. *Pennsylvania,* 335 U.S. 437, 441, 69 S. Ct. 184, 93 L. Ed. 127. An accused has the burden of showing that he did not intelligently and understandingly waive his right to counsel; *Moore* v. *Michigan,* supra; at least where, as here, the record clearly shows that the accused was offered counsel by the court and rejected the offer. *Carnley* v. *Cochran,* 369 U.S. 506, 516, 82 S. Ct. 884, 8 L. Ed. 2d 70. The record contains a verbatim transcript of the hearing of October 15, 1959, at which the defendant was offered, and he rejected, the services of the public defender. The defendant obviously fully comprehended what he was doing. This is not a situation where the accused was handicapped by mental deficiency or other inability to make an intelligent choice, or by precipitateness in the acceptance of a plea of guilty. See *Carter* v. *Illinois,* 329 U.S. 173, 179, 67 S. Ct. 216, 91 L. Ed. 172. The defendant is not inexperienced in criminal matters or unfamiliar with the basic elements of criminal procedure. He waived his right to counsel on this appeal and cannot now take advantage of his refusal to have counsel appointed for him. See *Commonwealth* v. *Hanley,* 337 Mass. 384, 386, 149 N.E.2d 608, cert. denied, 358 U.S. 850, 79 S. Ct. 79, 3 L. Ed. 2d 85. The record makes it abundantly clear that he could and would have had the able assistance of the public defender in these appellate proceedings had he been willing to accept it. He has been enabled to perfect this appeal with the same facility

as if he had had unlimited funds available for the purpose; see *Griffin* v. *Illinois,* 351 U.S. 12, 19, 76 S. Ct. 585, 100 L. Ed. 891; except for the proper refusal of the court to appoint a special public defender of the defendant's own choosing. See *State* v. *Reid,* 146 Conn. 227, 232, 149 A.2d 698.

### III

To be certain that overall justice has been done, we have, despite the defendant's refusal to permit the public defender to provide trained assistance on this appeal, and in disregard of any and all technical shortcomings or procedural irregularities, reviewed the entire typewritten transcript of the 1947 trial to see whether there is anything to indicate any reversible error in connection with that trial. See *State* v. *Bill,* 146 Conn. 693, 694, 155 A.2d 752. The basic grounds of error claimed as to the 1947 trial were a refusal by the court to permit the defendant to contact or engage counsel of his choice, and a forcing of the services of the public defender onto him over his protest and without there being adequate opportunity for preparation of his defense. It is the claim of the defendant that he then had sufficient funds—and he so testified at the hearing on October 15, 1959—"to hire the best criminal lawyer in Connecticut," but that at some unstated time during his imprisonment these funds were used up so that he attained his present status of pauper, as found by the United States District Court.

Nothing which gives any support to the defendant's claims as to the 1947 trial appears in the transcript. The transcript opens with a motion by the public defender on behalf of the defendant that he not be shackled before the jury. The court

granted the motion. No other motion or claim was made. The voir dire followed. After that the evidence was presented. In his argument before this court on this appeal, the defendant claimed that he had given a Bridgeport attorney who visited him while he was awaiting trial in jail $20 to get another Bridgeport attorney to come to the jail to see about representing him, but that that attorney did not come to see him. The defendant had been apprehended and returned to Connecticut about June 3, 1947, when a bench warrant was issued. The transcript shows that his trial began July 8, 1947, over a month later, and that on July 9, 1947, the evidence was concluded, a verdict of guilty was rendered, and the defendant was sentenced. He neither took the stand nor presented any evidence.

We find nothing to give the slightest support to the wholly unsubstantiated claims of the defendant that he was prevented from obtaining counsel of his own choice, that he asked for a postponement to permit further efforts toward obtaining private counsel, that he objected to the public defender as counsel, that the public defender had inadequate opportunity to prepare the case, and that the defendant made, before the trial court, the claims he now sets forth. He had ample opportunity to make any one or all of these claims before the commencement of the voir dire, and there is no indication whatever that he did so. As the transcript of the proceedings after conviction and prior to sentence shows, and as we have pointed out heretofore, the defendant is not inexperienced in criminal matters. His subsequent legal maneuvers in this case indicate that he is not of a temperament to be overawed by anyone. He is an intelligent, resourceful person, familiar at first hand with basic criminal procedure

and penal institutions. Neither before nor after the voir dire did he, his attorney or anyone else make any claims about his obtaining private counsel or object to representation by the public defender.

Although the defendant claims that his briefcase, containing material which would have been helpful on this appeal, was taken from his cell in Wethersfield during January, 1960, he is singularly vague as to just what the material was. At one point, he seems to make some claim that it was newly discovered evidence. If so, it could have no bearing on this appeal from the 1947 conviction, nor could this court act upon it. See cases such as *Smith* v. *State,* 139 Conn. 249, 251, 93 A.2d 296.

We are satisfied that neither the present printed record nor the typewritten transcript of the 1947 trial indicates that the defendant was given other than the best defense which the facts would permit. His identification as the person who shot Captain Melvin was very strong. A .25-caliber pistol found on his person was identified as the one from which the bullets which injured Melvin were fired. On the defendant's return from Texas, he saw Melvin in the hospital, was identified by Melvin, and told Melvin he had thought Melvin was a younger man and asked him how he felt. The shooting occurred while the defendant sat in a police car, alone with Melvin, whom the defendant had agreed to accompany to the police station. Immediately thereafter, the defendant fled. A few days later, he was apprehended in Texas. The defendant's criminal record was such as to suggest that his best strategy, especially in view of the circumstances of the shooting, was not to take the stand and subject himself to cross-examination. We find nothing to indicate that his 1947 trial was in any way erroneous or

unfair, either in the respects claimed by him or in any other respect.

There is no error.

In this opinion the other judges concurred.