LeRoy NASH
v.
Warden REINCKE, Connecticut State Prison.

Civ. No. 9557.

United States District Court
D. Connecticut.

Dec. 12, 1962.

---

LeRoy Nash, pro se.

BLUMENFELD, District Judge.

The petitioner, a state prisoner, is presently serving a term of not more than thirty nor less than twenty-five years of a sentence imposed on July 9, 1947, after a jury verdict of guilty on a charge of assault with intent to murder a Captain in the Danbury Police Department on May 26, 1947.

He has followed a tortuous course since then in pursuing an appeal from his conviction. That journey is logged in several prior habeas corpus proceedings brought in this court and in the record on his appeal in the state court. The appeal was heard in June and decided adversely to him on July 31, 1962. State v. Nash, 149 Conn. 655, 183 A.2d 275, cert. denied, 83 S.Ct. 130.

He now presents another petition for habeas corpus with eleven "Issues Presented for Adjudication." Nine of these reiterate his former complaints that he did not have the benefit of assigned counsel *of his own choice* to aid him in the proceedings on appeal and in intermediate collateral proceedings instituted to recover some "papers", allegedly prepared by him for use on the appeal which were lost during the commotion and subsequent clean-up of debris resulting from a prison riot.[1] The other two "issues"

---

1. *The Lost Papers*

One result of the prison riot of January 6, 1960 was to provoke a sizeable diversionary maneuver by Nash. He instituted proceedings in the state court in an attempt to obtain the return of his

relate to matters of state procedure—whether it was a denial of due process to fail to read the information to the jury until after the evidence was closed—or to fail to poll the jury on their verdict.

The allegations of facts in his petition repeat in detail his version of his repudiation of assistance by the Public Defender, whom the state court offered to appoint for that purpose; his insistence that counsel of his own choice be assigned by the court to aid him on the appeal; and of his efforts to obtain a return of his brief case and its contents lost in the prison riot, which included, he alleges, an "affidavit essential to the prosecution of his appeal" and "irreplaceable." He also alleges that he was denied the opportunity to employ private counsel at the trial and that he received inadequate and faulty representation through the Public Defender at his trial.

The right of this indigent defendant in a serious non-capital criminal case to a reasonable opportunity to appeal was safe-guarded in this case by Judge Smith's judgment on a writ of habeas corpus, Civil No. 7718, September 12, 1959 "discharging Nash from custody unless within a reasonable time the filing of appeal by him to the Supreme Court of Errors from the 1947 conviction is permitted, and reasonable opportunity given thereafter for presenting the case on appeal."

■ The statutes of Connecticut do not expressly exempt even an indigent defendant from the obligation to pay the court fees and to furnish a bond on appeal, State v. Reddick, 139 Conn. 398, 400, 94 A.2d 613 (1953), but the Public Defender is not obligated to pay court fees, Conn.Gen.Stats. § 52–259(a), and is reimbursed for necessary disbursements when he acts in behalf of an impoverished accused. Conn.Gen.Stats. § 54–81. Although Nash refused the tender of services of the Public Defender as his counsel, the state court, in a Memorandum of Decision filed October 27, 1959 by Alcorn, J. (now a Judge of the Supreme Court of Errors), Superior Court, Fairfield County, Criminal No. 10,884, nevertheless designated the Public Defender as the conduit through whom the petitioner's appeal and the other appropriate papers to prepare the record on appeal should be filed in order to relieve him of court fees and costs. The practice is approved in State v. Reddick (supra) and State v. Zukauskas, 132 Conn. 450, 451, 45 A.2d 289 (1945), and its effectiveness is recognized in United States ex rel. Carrono v. Richmond, 279 F.2d 170, 173 (2 Cir. 1960). The Public Defender Law of Connecticut, as employed by its courts, does not violate the requirements of due process. United States ex rel. Reid v. Richmond, 277 F.2d 702, 703 (2 Cir. 1960). Nash promptly moved, on November 3, 1959, to correct Judge Alcorn's order, reciting in his motion, *inter alia*, " * * * the applicant does not merely indicate 'personal distrust of any public defender.' Applicant respectfully demands that his legal right to refuse the services, or appearance, of the state's public defender be respected, as all federally protected legal rights are

---

lost brief case and its enclosed "papers." He again brought a petition for habeas corpus in this court, claiming prison officials had deprived him of those papers to thwart his appeal. After a hearing, Judge Smith discharged the writ on July 21, 1960, but obtained from the state's attorney an agreement to furnish the petitioner with another copy of the transcript of the original trial and to stipulate to an extension of time adequate to permit the defendant to file the necessary papers in pursuit of his appeal.

There is no need to spell out the steps taken by Nash in the state court in his effort to obtain the lost "papers." There were motions for appointment of special counsel to aid him in the various stages of that proceeding and for a transcript of the hearing therein, and he sought a writ of mandamus from the Chief Justice of the Supreme Court of Errors. He sought another writ of habeas corpus in this court on the ground that he would not be able to perfect the appeal from his conviction until an appeal was first heard on the civil case relating to the lost papers. That petition was dismissed. Civil No. 8866, September 26, 1961.

presumed to be respected." He reiterated in his prayer for relief on that motion:

"WHEREFORE, the applicant respectfully moves the court to amend the judgment of the memorandum of decision of October 26, 1959, to include the protection of federally protected rights to which applicant is legally entitled, in so far as it is applicant's right to appeal his 1947 conviction 'pro se' (which he is capable of doing, because he now has ready access to the 1951 Practice Book) to the Supreme Court of Errors and refuse to have the state's public defender appear for applicant, no matter how limited the appearance, or appear for filing of applicant's appeal, as is directed by the court, or to file applicant's request for a finding should one be sought, as is directed by the court, or for any other reason.

"Applicant objects to the assignment of the public defender, as abovementioned, no matter how limited, no matter what the reason.

"Filed Nov. 3, 1959. LeRoy Nash." Supreme Court of Errors Record, State v. Nash, Feb. Term 1962 No. 5293, pp. 12, 13.

He also asked this court for a final judgment that he be discharged from custody, objecting to his representation by the Public Defender for any purpose. That motion in this court was denied. Civil No. 7718, Memorandum of Decision, December 28, 1959. An appeal in behalf of Nash was filed on January 22, 1960 by the Public Defender. Claiming that this was arbitrary and that the state was using the Public Defender as an instrument to deprive him of his legal rights, Nash filed a motion in the state court requesting the appointment of a special Public Defender, suggesting a certain lawyer. That motion was denied by Judge Alcorn, February 25, 1960. At about the same time, he moved in this court again for final judgment discharging him from custody, which was denied. Civil No. 7718, Memorandum of Decision, February 15, 1960.

On August 2, 1960, the petitioner sent a letter to the Clerk of the Superior Court to notify the state court that he "unequivocally repudiates the public defender as either defense counsel or counsel upon the appeal to the Supreme Court of Errors and any matters pertaining thereto," and again during 1961 he filed a barrage of motions in the state court seeking assignment of a special Public Defender, the return of his "papers", and an extension of time for filing his appeal. The Public Defender was again assigned as his counsel, and an extension of time to file a draft finding and request for finding was granted. Ruling by Thim, J., July 28, 1961, Record No. 5293, p. 36.

### The Right to Counsel on Appeal

■ Whether a "reasonable opportunity * * * for presenting the case on appeal" embraces a requirement to furnish counsel for that purpose to an indigent defendant in a non-capital case has not yet been decided by the Supreme Court although the spirit of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955), rehearing denied 351 U.S. 958, 76 S.Ct. 884, 100 L.Ed. 1480, which held that a state may not deny the same review to those who cannot afford to pay the court reporter for a transcript of the trial proceedings that it grants to those who can, suggests that it might do so if called upon to decide such a case.[2]

2. The analogy to the right to counsel is close indeed. It may be possible to draw a distinction between the lack of "fundamental fairness" to uncounseled defendants during criminal trials and upon appeals, where a panel of judges can assure impartial justice in the absence of counsel. Betts v. Brady, 316 U.S. 455, at 472, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).

However, the legal complexities at the trial stage, as in Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S. Ct. 223, 100 L.Ed. 126 (1956), and Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945), and procedural opportunities as in Hudson v. North Carolina, 363 U.S. 697, 80 S.Ct. 1314, 4 L.Ed. 2d 1500 (1960), which often requires ex-

Since the Connecticut Supreme Court of Errors proceeded on the basis that he was entitled to the benefit of counsel on his appeal and did assign the Public Defender to assist him, there is no need here to pass upon a constitutional question that is not free of doubt. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936). See generally Anno. 55 A.L.R. 2d, pp. 1085–88.

### *The Counsel that was Provided*

█ The state court offered the services of the Public Defender to assist Nash with his appeal on more than one occasion. Nash persisted, however, in taking the position that the privilege of obtaining the assistance of counsel permitted him to require the court to designate his own choice of counsel. Nash does not fill the part of a bewildered, immature, or mentally deficient defendant who finds himself facing serious criminal charges for the first time. The records in the various proceedings in this court in habeas corpus and civil rights cases and those proceedings in the state court conducted by him pro se reveal that he has the maturity and self-confidence and ability to present a case, based upon a long experience and familiarity with legal proceedings, particularly in criminal matters. No one can have the slightest doubt that he was aware at all times that he was knowingly and intelligently rejecting the aid of counsel. It would be

easy to go further and conclude that he calculatingly attempted to create the predicament which he now complains of because he regarded himself as best qualified to handle his own case. He was never denied the right to have counsel. The privilege of enjoying the assistance of counsel provided by the state is not synonymous with the right to be represented by counsel of his own choice. Ex Parte Lee, 123 F.Supp. 439, 445 (D.C. R.I.1954) aff'd Lee v. Kindelan, 217 F.2d 647, cert. denied 348 U.S. 975, 75 S.Ct. 538, 99 L.Ed. 759.

The state court record before me reveals no "vital flaw" or "unusual circumstances" with respect to the offer made by the state court of counsel to assist him on his appeal and his knowing and intelligent rejection of that offer. The several motions and written arguments made by Nash in support of his insistence upon his right to refuse the assistance of the Public Defender as his counsel, which are a part of the state court record prepared by him on his appeal, so amply establish that the petitioner rejected the assistance of counsel on his appeal that I find no warrant in that record for conducting a new hearing on that issue. United States ex rel. Rogers v. Richmond, 252 F.2d 807 (2 Cir. 1958) (reversed on another ground 365 U.S. 534, p. 539), 81 S.Ct. 735, at p. 738, 25 L.Ed.2d 760 (1961). See 73 Harv.L.Rev., pp. 1399–1402. Furthermore, during the time when he was en-

---

pert handling are as likely to be present on an appeal as well as on a trial. The presence in a case of questions of serious significance to an accused's defense at or before trial, Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), which "may well be considered by an imaginative lawyer", Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442, 443 (1962), not infrequently require expert preparation of the record and argument on an appeal. And now that the doctrine of adequate state ground extends to habeas corpus proceedings, the consequences of lack of expert assistance may be decisive.

The fact that, since Judge Smith's decision in this case, Civil No. 7718, Con-

necticut's Public Defenders have consistently followed the practice of acting as counsel for indigent defendants on appeals in serious non-capital cases to assist the accused as counsel in those cases where the Public Defender is of the opinion that an error of law was committed at the trial, and to act as a conduit for filing papers in those cases where an accused wishes to appeal, despite the Public Defender's opinion that he discerns no error of law and that an appeal would be frivolous, would tend to establish the existence, at least in the law of Connecticut, of a sufficient obligation to provide counsel in such cases upon which to rest a Fourteenth Amendment "equal protection" obligation.

gaged in attempting to force a designation of counsel of his own choice, Nash's dissatisfaction with the state court's denial of that motion prompted the second motion in this court for a final judgment in Civil No. 7718, in which he reiterated his objection to representation by the Public Defender for any purpose. Judge Smith, (now Circuit Judge), at that time decided that the action taken by the state court satisfied the constitutional requirement that an appeal be made available to an indigent defendant and that the limited employment of the Public Defender to effectuate that right could not cause prejudice to Nash. In denying that motion, he stated, "From what appears, in view of his continuous objection to representation by the Public Defender, it would seem that he wishes to press this objection rather than go ahead, at this time, with the appeal to the Supreme Court of Errors through a limited appearance by the Public Defender." Civil No. 7718 Memorandum of Decision, February 15, 1960. His subsequent motions for a certificate of probable cause, leave to appeal in forma pauperis, and assignment of counsel were denied by the Circuit Court of Appeals, which also dismissed his appeal from Judge Smith's decision on December 13, 1960. His claim that he was deprived of a constitutional right to counsel on his appeal has already received the utmost consideration by the state courts and, after hearing, by this court. It is no different now than it was then.

### The Right to Counsel at the Trial

█ Resort to the state court's record on appeal does not provide the same opportunity for getting at the true facts underlying his constitutional claims of improper and inadequate representation by counsel at the trial. They are the same here as those which he made before the Supreme Court of Errors.

His allegations and the basis upon which these claims were resolved against him by the Supreme Court of Errors are found in the opinion of Judge King

in State v. Nash, 149 Conn. 655, pp. 658–660, 183 A.2d 275, 277:

"At another point in that brief, however, he claims that (a) at the 1947 trial the public defender was forced on him as counsel, over his protests to the presiding judge that he wished to hire private counsel at his own expense, and (b) he was not visited or interviewed by the public defender until just before the trial and therefore was inadequately represented by the public defender at that trial.

"The defendant's mere assertion of these claims in no way establishes their validity. A defendant cannot make a claim of fact and then call on the state affirmatively to disprove it. If the record fails to indicate that any such thing ever occurred, there would be nothing which the state could point to which would affirmatively show that it did not occur. There is no presumption of error in the trial of a case. An appellant, to substantiate the claims he makes, must bring before this court something more than his mere uncorroborated statement. See United States v. Morgan, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248. The defendant made no effort to obtain a finding from the trial judge as to the true facts with respect to the matters in the 1947 trial claimed as error. An inspection of the voluminous file in this case discloses that the making of any finding was opposed by the defendant in a paper filed by him under date of December 29, 1961, entitled 'Defendant's Answer to the State's "Motion for Extension of Time [to File a Counterfinding]" dated Dec. 20, 1961.' In lieu of a finding, the defendant preferred to, and did, write a long 'Statement of Facts,' which at his request has been printed in the record. This statement is nothing more than his unsupported claims as to the facts. It in nowise establishes them. His assignments of error deal

solely with matters concerning the perfecting of this appeal. At the argument before this court, he stated that these assignments of error embraced his claims of error on this appeal. There is nothing in the record which supports any of his claims of error concerning the 1947 trial.

## "II

"Ordinarily, the foregoing discussion would, and perhaps it should, be decisive of this appeal, adversely to the defendant. We cannot, however, overlook the fact that the record was prepared according to the wishes of the defendant himself, and that in spite of his prior experience in criminal matters he was, after all, a layman. Consequently, we examine the assignments of error and claims by him with respect to the perfecting of this appeal to determine whether there is anything in them which might affect this appeal from the 1947 judgment."

But, later on, as revealed in Part III of the opinion, pp. 663–665, 183 A.2d pp. 279–280, the court broke through the limitations of the narrow record on appeal to search the complete record of the case in the trial court in order to enlarge the basis for testing Nash's federal claims:

## "III

"To be certain that overall justice has been done, we have despite the defendant's refusal to permit the public defender to provide trained assistance on this appeal, and in disregard of any and all technical shortcomings or procedural irregularities, reviewed the entire typewritten transcript of the 1947 trial to see whether there is anything to indicate any reversible error in connection with that trial. See State v. Bill, 146 Conn. 693, 694, 155 A.2d 752. The basic grounds of error claimed as to the 1947 trial were a refusal by

the court to permit the defendant to contact or engage counsel of his choice, and a forcing of the services of the public defender onto him over his protest and without there being adequate opportunity for preparation of his defense. It is the claim of the defendant that he then had sufficient funds—and he so testified at the hearing on October 15, 1959— 'to hire the best criminal lawyer in Connecticut,' but that at some unstated time during his imprisonment these funds were used up so that he attained his present status of pauper, as found by the United States District Court.

"Nothing which gives any support to the defendant's claims as to the 1947 trial appears in the transcript. The transcript opens with a motion by the public defender on behalf of the defendant that he not be shackled before the jury. The court granted the motion. No other motion or claim was made. The voir dire followed. After that the evidence was presented. In his argument before this court on this appeal, the defendant claimed that he had given a Bridgeport attorney who visited him while he was awaiting trial in jail $20 to get another Bridgeport attorney to come to the jail to see about representing him, but that that attorney did not come to see him. The defendant had been apprehended and returned to Connecticut about June 3, 1947, when a bench warrant was issued. The transcript shows that his trial began July 8, 1947, over a month later, and that on July 9, 1947, the evidence was concluded, a verdict of guilty was rendered, and the defendant was sentenced. He neither took the stand nor presented any evidence.

"We find nothing to give the slightest support to the wholly unsubstantiated claims of the defendant that he was prevented from obtaining

counsel of his own choice, that he asked for a postponement to permit further efforts toward obtaining private counsel, that he objected to the public defender as counsel, that the public defender had inadequate opportunity to prepare the case, and that the defendant made, before the trial court, the claims he now sets forth. He had ample opportunity to make any one or all of these claims before the commencement of the voir dire, and there is no indication whatever that he did so. As the transcript of the proceedings after conviction and prior to sentence shows, and as we have pointed out heretofore, the defendant is not inexperienced in criminal matters. His subsequent legal maneuvers in this case indicate that he is not of a temperament to be overawed by anyone. He is an intelligent, resourceful person, familiar at first hand with basic criminal procedure and penal institutions. Neither before nor after the voir dire did he, his attorney or anyone else make any claims about his obtaining private counsel or object to representation by the public defender."

■ As the opinion of Justice King points out at 149 Conn. p. 659, 183 A.2d at p. 278, there is an appropriate and reasonable procedure by which the record could have been opened up to permit an inquiry into the facts not recorded therein on which his claims were based.[3] The burden of presenting facts which do not come before the court in the usual procedure is upon the party who wants them in the record. Miner v. Miner, 137 Conn. 642, 644, 80 A.2d 512 (1951). This procedure is also used to bring into the record the fact that a party made certain claims at the trial. Barber v. Morgan, 89 Conn. 583, 94 A. 984 (1915); Stabile v. D & N Transportation Co., 129 Conn. 11, 13, 26 A.2d 12 (1942). Since Nash was not subjected to any different treatment than that given to any other litigant in the state courts in this respect, see cases in Maltbie Connecticut Appellate Procedure, 2d Ed. § 283, he was not denied equal protection of the laws. Griffin v. Illinois, (supra).

■■ There is no requirement in the state courts of Connecticut that a record shall be made of all proceedings in criminal cases had in open court as is made mandatory in the federal courts. 28 U.S.C. § 753(b). In United States ex rel. Rogers v. Richmond, 178 F.Supp. 69 (D.Conn.1958), aff'd 271 F.2d 364, (2 Cir.), and in State v. Nash, (supra), it was held that the burden was on Nash to prove that he asked to employ a lawyer of his choice, and that the Public Defender had inadequate time to prepare his defense. Due process does not require that the burden of persuasion be put upon the state. The authority of a state to establish and enforce the procedure of its own courts is respected to the extent of precluding a criminal defendant's right to a review of his federal constitutional claim where he has not taken advantage of state procedural rules. It does not matter whether he affirmatively refused to follow them, as Justice King suggests, State v. Nash, (supra), or whether they were inadvertently lost by inexcusable procedural default. Daniels v. Allen, decided sub nom. Brown v. Allen, 344 U.S. 443, 482–487, 73 S.Ct. 397, 97 L.Ed. 469 (1953); United States ex rel. Brown v. Smith,

---

3. This is provided for by § 423 Connecticut Practice Book 1951. Formerly called "rectification of the appeal" under the procedure set forth in the 1934 Practice Book and having its origin in Rules with Regard to the Preparation of Cases in the Supreme Court of Errors, 37 Conn. 619 (1870), it is now called a motion to correct the record and the procedure is simplified. It is no longer resolved upon submitted affidavits. If the motion raises an issue which makes it necessary to go outside the stenographer's notes or the file (as the situation was in this case) then the case is referred to a state referee to hear and make a report. See generally Maltbie, Connecticut Appellate Procedure 2d Ed. § 283.

Warden, 306 F.2d 596, 602 (2 Cir. 1962).[4] Whatever vice there may be in applying the rule of adequate state ground in some cases, voiced in Daniels v. Allen, (supra) by Mr. Justice Black, 344 U.S. p. 552, 73 S.Ct. p. 433, who found "it difficult to agree with the soundness of a philosophy which prompts this Court to grant a second review where the state has granted one but to deny any review at all where the state has granted none," cannot be found to exist in this case.[5] Nor is it necessary to test the adequacy of the state ground by measuring it against the standards of reasonableness formulated in United States ex rel. Noia v. Fay, 300 F.2d 345, 359–360 (2 Cir. 1962), cert. granted 369 U.S. 869, 82 S.Ct. 1140, 8 L.Ed.2d 274, because in Nash's case there actually was not an abortion of his right to a full hearing before a federal court on these claims.

A writ of habeas corpus was issued in Civil No. 4126 after Nash testified in support of several claimed grounds for release, including (a) inadequate and faulty representation by counsel; (b) that he was prevented from employing private counsel; (c) unconstitutionality of the procedure used; and other attacks on the conduct of the trial itself. The court made the subpoena process available to Nash and appointed counsel to assist him in securing and presenting witnesses and evidence at a further hearing which the court felt was called for. Civil No. 4126, Memorandum of Decision & Order, December 30, 1952. Not satisfied with counsel's assistance, Nash obtained permission to appear for himself. After hearing the evidence presented, including that of the State, the court was unable to find that Nash estab-

lished facts to show lack of effective representation by counsel. On the contrary, "The court [was] satisfied that both the conduct of the criminal trial and his representation by counsel were in accord with the requirements of due process * * *. There was no failure to consult with the accused by his counsel, the Public Defender." The proceedings upon the trial and at sentencing were also re-examined at his hearing. The other grounds of his petition were found insufficient. The petition was discharged, and Nash was remanded to the custody of the respondent warden. Civil No. 4126, May, 1953.[6]

■ In exercising jurisdiction in habeas corpus proceedings, "All that has gone before is not to be ignored as irrelevant." Brown v. Allen, 344 U.S. 443 at 500, 73 S.Ct. 397, 97 L.Ed. 469 (1953). The state court record, consisting in considerable measure of pro se motions and statements by Nash, the findings made there, the several adjudications by its lower courts and by its highest court, supplemented by the findings and adjudications made in this court after full and careful hearings and the examination of the transcripts of the hearings in the state court, all conducted without technical nicety, present an example of as thorough and fair an examination into the substance of the petitioner's claims as one is ever likely to find. Nash has had his days both in the state courts and in this court. His constitutional guaranties have been honored in spirit and in fact. Habeas corpus proceedings ought to be limited and bound within the rule of reason and law. The petition presents no new ground not previously presented and determined, and I am sat-

4. Whatever doubt Brown v. Allen (supra) left that a failure to comply with reasonable procedural rules was applicable as an adequate state ground in habeas corpus was dispelled in Irvin v. Dowd, 359 U.S. 394, at 407–408, 79 S.Ct. 825, at 833, 3 L.Ed.2d 900 (1959). See United States ex rel. Noia v. Fay (supra).

5. See generally Reitz, Federal Habeas Corpus: Impact of an Abortive State Proceeding, 74 Harv.L.Rev., p. 1315 (1961).

6. When that hearing was held in 1952, the highest court of the state had not yet passed upon these claims, nor had Brown v. Allen (supra) been decided. See 344 U.S. at p. 503, 73 S.Ct. at 444. At that time, it appeared that Nash's right to appeal had been lost through his failure to exercise it in time.

isfied that the ends of justice will not be served by another inquiry now. 28 U.S.C. § 2244; Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1923).

The petition is dismissed. The papers may be filed without pre-payment of fees.