LeRoy Nash *v.* Frederick G. Reincke, Warden, Connecticut State Prison

King, C. J., House, Cotter, Thim and Ryan, Js.

Argued March 7—decided April 2, 1968

*Albert J. Saffo,* special public defender, for the appellant (plaintiff).

*Arlen D. Nickowitz,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (defendant).

KING, C. J.  The plaintiff was convicted on July 9, 1947, under an information charging him with an assault with intent to murder Eugene Melvin, a captain in the Danbury police force, on May 26, 1947,

in violation of what was then § 6049 of the 1930 Revision of the General Statutes (now General Statutes § 53-12). See also *State* v. *Nash,* 149 Conn. 655, 656, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104. The crime of which Nash was convicted was a serious one, and a felony, but it was not a capital crime. See *United States ex rel. Cooper* v. *Reincke,* 333 F.2d 608, 610 (2d Cir.), cert. denied, 379 U.S. 909, 85 S. Ct. 205, 13 L. Ed. 2d 181.

This appeal is taken from a judgment rendered June 27, 1966, denying Nash's application for a writ of habeas corpus after a full hearing on the merits. The trial court granted statutory certification for an appeal to this court pursuant to § 52-470 of the General Statutes.

The claims of the petitioner, insofar as raised in his brief, are basically three in number.

(a)

In the first place, Nash claims a lack of jurisdiction of his person based on the fact that the bench warrant under which he was arrested was not issued on sworn information and thus failed to conform to the rule laid down, about eighteen years after his conviction, in *State* v. *Licari,* 153 Conn. 127, 132, 214 A.2d 900. After full consideration, however, it was held in *Reed* v. *Reincke,* 155 Conn. 591, 601, 236 A.2d 909, that the *Licari* rule had no retroactive application to cases such as Nash's, which had been tried through on the merits before any claim of an invalidity in the jurisdiction of the person had been raised.

(b)

Nash seeks to avoid this result because he was not represented by counsel at the time he was first

put to plea, and he also seeks to invalidate his 1947 trial on this ground and on a related claim that counsel, as matter of law, was appointed too late to provide adequate opportunity for preparation of a defense. The latter claim, but without any contention of a lack of jurisdiction of the person, was considered, although it was not properly raised, in *State* v. *Nash,* supra, 663. Nash claimed then and claims now that he then had ample funds to obtain private counsel and wished to do so. He then had about $2500. He saw at least one attorney and corresponded with others. On June 11, 1947, a week after his arrest on June 4, he pleaded not guilty and also elected trial by jury. He made no request for postponement of either plea or election although he did inform the court of his desire and intention to employ private counsel. His trial did not commence until July 8, almost a full month after his plea and election and over a month after his arrest. He failed to engage private counsel, and on the trial date (July 8) he appeared without counsel. The court then ordered him represented by the public defender. Nash made no objection, until after his conviction, to representation by the public defender. See *State* v. *Nash,* supra, 658, 663. He sought no postponement, and he has never explained why he did not engage private counsel. He was not prevented from engaging any counsel he desired.

He certainly could not withhold, throughout the trial, especially while represented by competent counsel, a claim of invalidity in the court's jurisdiction of his person and then first raise that claim twenty years after his conviction. *State* v. *Licari,* supra, 130; 21 Am. Jur. 2d 400, Criminal Law, §§ 378, 379; see also *State* v. *Darwin,* 155 Conn. 124, 146, 230 A.2d 573.

Nash's insistence on his undoubted right to employ private counsel, his financial ability so to do, his general high level of intelligence and his unexplained failure to obtain private counsel during the time between his arrest on June 4 and the commencement of his trial on July 8 blocked the court from providing the public defender at an earlier stage. Nash could not defer his trial indefinitely on the claim that he was going to engage private counsel and, without any credible explanation, fail to take any effective steps to procure private counsel. Indeed, Nash never requested a postponement either for further time to procure private counsel or for any other reason.

The public defender was an experienced and competent practitioner, and his failure to ask for a postponement or continuance repels any claim that he felt more time for preparation was needed. Nash neither took the stand nor offered any evidence, nor has he suggested any evidence which could have been helpful to his cause. *State* v. *Nash,* supra, 664. Indeed, there was an absence of any real defense. See *State* v. *Nash,* supra, 665. There was opportunity, prior to the actual commencement of the trial on the merits, for the public defender, after being assigned to the case, to inspect the bench warrant and to raise any claim of invalidity in it. In no other respect is prejudice even suggested.

The present rule of the United States Supreme Court requires that, unless the right to counsel has been intelligently waived, counsel be provided an indigent at least in all serious, even though noncapital, cases. *Gideon* v. *Wainwright,* 372 U.S. 335, 338, 83 S. Ct. 792, 9 L. Ed. 2d 799; 21 Am. Jur. 2d, Criminal Law, § 313; see notes, 5 A.L.R.3d 1269; 93 L. Ed. 137; 2 L. Ed. 2d 1644; 9 L. Ed. 2d 1260.

The *Gideon* rule has generally been considered to be retroactive in its application. *United States ex rel. Cooper* v. *Reincke,* 333 F.2d 608, 610 (2d Cir.), cert. denied, 379 U.S. 909, 85 S. Ct. 205, 13 L. Ed. 2d 181; note, 10 A.L.R.3d 1371, 1417 § 11 (c).

Where an attorney must be appointed, the appointment must be made in time to permit effective representation. See cases such as *Powell* v. *Alabama,* 287 U.S. 45, 58, 53 S. Ct. 55, 77 L. Ed. 158. But the *Gideon* rule prescribes no arbitrary, particular, point of time, before trial, at which the attorney must be appointed for an indigent accused. When the appointment should be made depends upon the circumstances of the particular case, not only the nature of the proceedings but what actually occurs at the trial. The appointment must be made in time for the accused to have the benefit of the attorney's guidance at any "critical" point in the proceedings. *Hamilton* v. *Alabama,* 368 U.S. 52, 55, 82 S. Ct. 157, 7 L. Ed. 2d 114; *United States ex rel. Cooper* v. *Reincke,* supra, 611.

It must not be overlooked that Nash pleaded not guilty. Except for the failure to raise a claim of lack of jurisdiction of the person, a claim which, as already discussed, has no merit since it could have been raised by the public defender, Nash points to nothing to indicate any prejudice or disadvantage resulting to him from the fact that, by his own maneuvers, he prevented the court from appointing the public defender either prior to plea and election or thereafter but at an earlier time than the appointment was actually made. There is nothing to indicate that Nash did not have the fair trial to which he was constitutionally entitled. *United States ex rel. Cooper* v. *Reincke,* supra, 611, 612.

Nash makes much of the case of *Powell* v. *Ala-*

*bama,* supra, 50. The facts in the *Powell* case, as set forth in the opinion, are little short of shocking and bear no relationship to those in Nash's case. The *Powell* case was quite properly decided on the ground that he was not given a fair trial.

The defendant also lays stress on the case of *Church* v. *Pearne,* 75 Conn. 350, 355, 53 A. 955, which was cited in *State* v. *Licari,* 153 Conn. 127, 133, 214 A.2d 900. As pointed out in *State* v. *Licari,* supra, 129, it was the settled practice in Connecticut to issue bench warrants, without oath or affirmation, on the oral statement and written information of the state's attorney. Neither *Church* v. *Pearne,* supra, nor any other Connecticut case had been construed or understood as requiring, for the issuance of a bench warrant, an oath or affirmation under the state or the federal constitution. As pointed out in *State* v. *Licari,* supra, 132, it was the decisions of the United States Supreme Court which brought about the change in our law set forth in the *Licari* case.

Other cases relied on by Nash are obviously irrelevant to any case conducted in accordance with the requirements of a fair trial, as was this. Both *Hamilton* v. *Alabama,* 368 U.S. 52, 55, 82 S. Ct. 157, 7 L. Ed. 2d 114, and *White* v. *Maryland,* 373 U.S. 59, 60, 83 S. Ct. 1050, 10 L. Ed. 2d 193, were capital cases. In each, the accused lost potentially valuable rights by failing to assert them on arraignment. Indeed, in the *White* case, the accused, without counsel, pleaded guilty to murder, and the plea was afterwards allowed in evidence against him at his trial, which was conducted under a substituted plea of not guilty. The facts in these cases obviously differ widely from those in Nash's case. *United States ex rel. Cooper* v. *Reincke,* supra, 610.

(c)

Nash's final claim of error is based on the fact that the state prison at Wethersfield was abandoned in 1963, and all inmates, including Nash, were removed to a new, modern prison located in the towns of Somers and Enfield. Nash claims that, since the judgment ordered confinement in the state prison at Wethersfield, upon his subsequent removal to the new prison his detention became illegal, and he became entitled to immediate release. This claim merits but brief discussion.

It is true, of course, that a convict cannot be properly sentenced to one penal institution and then be actually taken to, and confined in, another institution, without statutory or judicial authority, and at the whim of administrative officials. But nothing of that kind occurred here. Nash was legally sentenced to the state prison which was then located in Wethersfield, and he was confined there for some fifteen years until he and all other inmates were transferred to the new prison. Section 1 of No. 215 of the 1963 Special Acts (31 Spec. Acts 205, No. 215) did provide that the state prison plant at Wethersfield "shall not be used for jail or other penal purposes after all state prisoners are moved to Enfield". Furthermore, § 1 of No. 28 of the 1963 Public Acts amended § 18-1 of the General Statutes to provide that the land of the state used for prison purposes in Enfield and Somers (instead of Wethersfield) "shall remain the State Prison".

Although it may be argued that more precise legislative authority for the transfer of prisoners in Wethersfield to the new prison would have been preferable, the foregoing legislation more than adequately expresses an intent to authorize the trans-

fer.   This is without regard to the fact that, if Nash's contention were correct, it would require the wholesale liberation of every prisoner transferred from Wethersfield to our new and only prison, a construction which would be unreasonable and bizarre indeed.   See cases such as *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524.

There is no error.

In this opinion the other judges concurred.