### STATE OF CONNECTICUT *v.* DAVID GETHERS
### (10953)

SPEZIALE, C. J., HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued January 12—decision released July 3, 1984

*David Gethers,* pro se, the appellant (defendant), with whom was *Mark Rademacher.*

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Kenneth Leyba,* legal intern, for the appellee (state).

SHEA, J. The defendant[1] was convicted after a trial to a jury of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). On this appeal, he claims that the trial court erred: (1) in permitting him to represent himself at the trial; (2) in denying him the right to effective assistance of counsel; and (3) in denying him due process of law by allowing a defense witness to be tampered with and influenced before that witness testified at the trial.[2] We find no error.

The circumstances relating to the defendant's various claims of a denial of his constitutional right to counsel require some elaboration.

---

[1] The defendant, who was named in the substituted information as David Gethers a/k/a Don Galland, represented to us at oral argument that his name had been legally changed to Don Galland.

[2] The defendant wrote his main brief. His reply brief was authored by him and his standby appellate counsel, Mark Rademacher. The defendant argued his appeal before us together with his standby counsel.

The crimes of which the defendant was found guilty arose out of an armed robbery of a New Haven bank on October 1, 1980. The office of the public defender was appointed to represent him on October 10, 1980. Thereafter, because of a conflict of interest, the office of the public defender was permitted to withdraw and a special public defender was appointed. That special public defender was later permitted to withdraw after claiming, inter alia, a "total breakdown in the attorney/client relationship" on January 13, 1981. The court, on that date, appointed Howard Gemeiner as his special public defender.

On Friday, June 5, 1981, the defendant pleaded not guilty to a substituted information charging two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and elected to be tried by a jury. Immediately after this plea and election, the state's attorney as well as counsel for the defendant said that they were ready to have the jury panel brought in "for introductions."[3] On the following Monday, June 8, 1981, the defendant appeared before the court with attorney Gemeiner at which time he raised a number of matters. These included claims that he could not be tried on two counts of robbery stemming from one incident based on the affidavit attached to the arrest warrant which he had in hand; that the first time he knew his trial was to start on June 5, 1981, was when he was brought to court; that he had not received certain "motions" from Gemeiner which had in fact been filed;[4] that he wanted a continuance until

[3] There is no indication that any jurors were selected on June 5, 1981, although introductions were made to the jury.

[4] The state pointed out at that time that "the motion to suppress, motion for discovery, motion for misconduct [prior uncharged], these are motions that have already been filed." The defendant also referred to the bill of particulars, discovery and answer to his motion on the "Brady" material. Apparently, the defendant's claim was that Gemeiner had not actually given him a copy of the state's answers to his motion for discovery.

June 12, 1981, to obtain a new attorney which he said his family had in mind; that he wanted a new jury panel with more "Afro people" than the panel presented to him contained. He also stated that he wanted to discharge Gemeiner not only for failing to give him copies of the motions which had been filed and neglecting to tell him that the trial would be starting on June 5, 1981, but also because "there is a total breakdown in the relationship between me and my current attorney."[5]

The court then answered several questions asked by the defendant. The court refused to answer the defendant's question about how he could be tried on two counts of robbery based on his interpretation of the affidavit attached to the arrest warrant, pointing out that the purpose of the trial was to allow the state to present its witnesses and that, if it did not sustain its burden of proof, then he could not be found guilty of the charge. It was also explained that the state had the burden at trial of proving each element of the crime charged and, if it did not, he was entitled to be found not guilty. The defendant indicated that he understood that the court was saying "it is up to the jury to say whether he [was] guilty of doing this and not doing that, or whatever." The court then told him that it was for the jury to determine questions of fact and to "decide whether there is any merits to the claims being presented in the information."

After the defendant requested a continuance to Friday, June 12, 1981, "for [the court] to evaluate my allegations," the court asked him: "[Do] you have a lawyer ready to come in and step in?" No direct answer was

[5] This "total breakdown" statement was made after Gemeiner had indicated that he had found the defendant "very, very difficult to communicate with"; that "[w]e go over and over with the same stories"; that he has "had a lot of defendants and I find Mr. Galland probably the toughest I have ever had a defense for."

given by the defendant.[6] The court, after pointing out that Gemeiner was the second lawyer who had been appointed to represent the defendant, stated that they would proceed with jury selection. The court noted that although it was Monday, it was "quite likely" that jury selection might take "until perhaps Wednesday or probably Thursday morning." Immediately thereafter, the court said that "[i]f your family in the meantime wants to retain another lawyer to step in, you can do that between now and when the evidence starts as of Thursday morning." The defendant's motion to discharge Gemeiner and his motion to put "some more Afro people on the jury panel" were denied, the court stating that it had no control over the race, religion or creed of the jury panel.

Prior to the luncheon recess, Gemeiner indicated that he was having a serious communication problem with the defendant and that he had spoken to him a number of times, but that if the defendant acted pro se, he would assist him in picking the jury, as the defendant wished, to make sure that "the legalities and the ground rules [are] followed."[7] The state's attorney said: "May I put on the record [that] Mr. Gemeiner has a very fine reputation as a criminal lawyer and has [had that] for a number of years now. He certainly represents the quality attorney in this area." After some discussion about the defendant's competency, counsel for the state said that he knew that the defendant "had proceeded in GA 6 [New Haven] on another case earlier

---

[6] The defendant's response was: "My family is out on the town right now. They may be in this building."

[7] The state pointed out at the time that before proceeding pro se the defendant "has to be informed and told the rights he gives up or the problems that develop with a pro se representation as opposed to an attorney; the type of things that he would not be aware of that attorneys might and so on."

in the year[8] and apparently without a fifty-four-forty taking place prior to that case";[9] that he did not see any basis for a competency examination; that the defendant was "articulate . . . able to write out what he thinks the motions are" and that "[h]e is able to at least understand the proceeding from his own point of view. . . ." The state's attorney went on to say: "Whether or not he is able to communicate that to counsel, I am not certain at this point." The defendant replied that he was not "incompetent or anything" but "[i]t is just that I am in disagreement, there is a total breakdown in the relationship between me and my current attorney." He stated that to ensure he received a fair trial, he needed "until Friday [June 12, 1981] to obtain my own attorney or you can appoint an attorney at that time and I will handle the case pro se."[10] Gemeiner thereupon addressed the court, stating that the crime involved "carries a penalty of 20 to 40" and he related that "throughout the case" he had a problem of communication with the defendant.

After the luncheon recess, Gemeiner asked the court's permission to put on the record that the defendant "said that he will exercise his rights to examine the jurors and [that] he *does not want me to participate* in that aspect of the case." (Emphasis added.) The court then inquired: "Let me clarify this. You say you don't want your attorney to ask any questions of these jurors?" The defendant answered: "No. But I want him

---

[8] The case mentioned is presently on appeal to this court (Docket #11569). In that case, the defendant is appealing from a judgment of guilty after a trial to the jury for the crime of tampering with a witness in violation of General Statutes § 53a-151.

[9] The state was apparently referring to General Statutes § 54-40 which is now encompassed by General Statutes § 54-56d. This statute, which concerns the competency of an accused to stand trial, involves his ability to understand the proceedings against him or to assist in his own defense.

[10] Our examination of the transcript of the entire trial indicates that the defendant never actually told the court of any named attorney which he and/or his family was trying to obtain for him.

to assist me if I have any questions." The court further inquired of the defendant: "And you realize that you are waiving the right to have an attorney do this? This is something you are going to do yourself?" The defendant replied: "Correct." He was then asked if he understood that it was his responsibility to ask proper questions within the scope of the rules of the court and he answered that he did. The court then stated that Gemeiner would remain and that, if the defendant had any questions, Gemeiner could assist him in conducting the voir dire. Thereafter, a jury of six with two alternates was selected, that procedure being completed on Tuesday, June 9, 1981.[11]

I

The defendant claims that in granting his request to represent himself the court failed to follow the procedure prescribed by Practice Book § 961[12] for waiver of his constitutional right to counsel both during the selection of the jury and thereafter at trial. The rule of practice was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney in defending himself, which was held to be a federal constitutional right in *Faretta* v. *California*, 422

---

[11] No transcript has been filed concerning the voir dire and selection of the jury of six and two alternates.

[12] Practice Book § 961 which is entitled "Waiver" provides:

"A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The right had received statutory protection in the federal courts by an enactment of the first Congress in 1789. Judiciary Act of 1789, 1 Stat. 92; see 28 U.S.C. § 1654. Prior to *Faretta* the view had been expressed that the right had a federal constitutional basis in the sixth amendment guaranty of the assistance of counsel, which implied a "correlative right to dispense with a lawyer's help." *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942); see *Faretta* v. *California,* supra, 814. Our state constitution, article first, § 8, also guarantees this right: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ." The constitutions of thirty-six states expressly provide for self-representation of an accused. *Faretta* v. *California,* supra, 813 n.10.

"A defendant in a criminal trial has a constitutional right to proceed without counsel as long as he voluntarily and intelligently elects to do so." *Lyles* v. *Estelle,* 658 F.2d 1015, 1020 (5th Cir. 1981); *State* v. *Nash,* 149 Conn. 655, 662, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962). Nothing more intricate than a voluntary and intelligent waiver of counsel is required of an accused to exercise his right to defend himself in person. *Faretta* v. *California,* supra, 835. "[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . . [H]is technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta* v. *California,* supra, 835–36. "[T]o also require a lawyer's expertise as a prerequisite to asserting the right would deny it to all but a small portion of society." *Lyles* v. *Estelle,* supra, 1019.

"While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson* v. *Zerbst,* 304 U.S. 458, 465, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). "[H]e should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams* v. *United States ex rel. McCann,* 317 U.S. [269] at 279." *Faretta* v. *California,* supra, 835.

Practice Book § 961, which the defendant maintains the court failed to follow, cannot be construed to require anything more for an effective waiver of counsel than is constitutionally mandated, because such a waiver triggers the constitutional right of an accused to represent himself. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. The rule is designed to implement the latter right as well as to protect the former. "A defendant *shall be permitted* . . . to represent himself at any stage of the proceedings . . . [but] only after the judicial authority makes a thorough inquiry and is satisfied" that four criteria for an effective waiver have been fulfilled: (1) advisement of the right to assistance of counsel; (2) possession of sufficient intelligence and capacity to appreciate the consequences of choosing self-representation; (3) comprehension of the nature of the charges and proceedings, the punishment exposure, and any additional facts essential to a broad understanding of the case; and (4) an awareness of the dangers and disadvantages of self-representation. Practice Book § 961.

## A

The defendant makes no claim that he was not properly advised of his right to the assistance of coun-

sel in accordance with the first requirement of the rule. Indeed, the court offered to permit the defendant as well as his counsel to question prospective jurors in the voir dire, a suggestion which the defendant rejected. His attorney, Gemeiner, was directed to act as standby counsel to assist the defendant during jury selection and also during the trial as the defendant requested.

## B

The contention of the defendant that his colloquy with the court was inadequate to satisfy the remaining criteria of Practice Book § 961 for an effective waiver seems to rely upon the absence of any ritualistic formal inquiry specifically referenced to them. An examination of the whole record provides an ample basis for the court to have found that each requirement of the rule was satisfied.

That the defendant possessed "the intelligence and capacity to appreciate the consequences of the decision to represent himself" is apparent from even a casual reading of the transcript. Both in the trial court and before us he has appeared to be highly articulate, perceptive and quite capable of protecting his interests. It was he and not his counsel who first objected to the state's filing of a substituted information which contained a second robbery count. At the next court session he renewed this objection, pointing out its inconsistency with a written statement of the state's witness which he had examined. He insisted on the use of his recently adopted legal name, Don Galland, in the information and raised an objection that the jury might be prejudiced by having already heard his former name, David Gethers. He objected that the jury panel contained too few black people. He requested a continuance to June 12 for the purpose of obtaining another lawyer. He requested copies of his motions for a bill of particulars, notice of uncharged misconduct, and discovery and also

wanted to know what had happened to "a motion on the Brady material." The state's attorney commented: "He is able to write out what he thinks the motions are. He is able to at least understand the proceeding from his own point of view." When his lawyer suggested the possibility of a psychiatric examination to determine his competency for trial the defendant spoke up: "Your Honor, it is not that I am incompetent or anything. It is just that I am in disagreement, there is a total breakdown in the relationship between me and my current attorney."

After jury selection was completed, the defendant requested that he be given any information pertaining to any promises made to a witness for the prosecution and also his criminal record, that certain witnesses be subpoenaed, and that he be furnished with copies of some photographs related to the case. Although the court again informed the defendant of the availability of his appointed public defender, Gemeiner, to conduct the actual trial of the case, the defendant reiterated his desire that Gemeiner not participate except as an advisor.

A record which "affirmatively shows that [the defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will," is sufficient to support a waiver. *Faretta* v. *California,* supra, 835. The transcript of the proceedings in this case adequately indicates that the defendant had the mentality necessary to appreciate the consequences of self-representation. It also leaves the indelible impression that he was highly sophisticated for a lay person in his knowledge of criminal law and procedure.

C

The requirement of Practice Book § 961 that there be a comprehension of "the nature of the charges and

proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case" is also adequately satisfied.

In addition to the fact that a trial court may appropriately presume that defense counsel has explained the nature of the offense in sufficient detail; *Henderson* v. *Morgan,* 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976); the transcript indicates that the defendant was fully aware that he was being charged with two counts of robbery in the first degree by virtue of having robbed two bank tellers at the same bank. His lawyer, Gemeiner, twice mentioned that these crimes carried a "penalty of 20 to 40." After jury selection, when the defendant again refused the assistance of counsel, he stated in response to inquiries by the court that he realized he was charged with two counts of robbery in the first degree and was aware of the penalties in the event of a conviction.

With respect to his knowledge of the factual background of the case it appears that the defendant had examined some statements of the victims of the crime which described the robbery incident. He knew that his accomplice would testify against him. The record indicates that he had discussed the case extensively with his attorney before it was reached for trial, including his intention to appear pro se.

### D

Although the defendant characterizes as the "most serious omission" the failure of the trial court to discuss the dangers and disadvantages of self-representation, the record is also sufficient to satisfy this facet of § 961. During the discussion of the defendant's request to proceed pro se, the state's attorney remarked: "Before anything of that nature takes place, he has to be informed and told the rights he gives up or the problems that develop with a pro se representation as

opposed to an attorney; the type of things that he would not be aware of that attorneys might and so on. May I put on the record Mr. Gemeiner has a very fine reputation as a criminal lawyer and has for a number of years now. He certainly represents the quality attorney in this area." This remark certainly alerted the defendant to the fact that he would be relinquishing his right to have experienced counsel represent him and would encounter problems with matters that only an attorney would be aware of if he proceeded to represent himself. The prosecutor also mentioned the defendant's evident unfamiliarity with the right of the state to file a substitute information as indicating his need for representation: "With representation you would know that the State has a right prior to a trial to file a substitute information, and this is something that Mr. Gemeiner is aware of, and this is one of the reasons why representation in the case of this sort I think is needed." The court was also informed that the defendant had experienced another criminal trial within the preceding year.[13]

The court expressly advised the defendant that the consequence of his decision not to have his attorney examine the prospective jurors in the voir dire was that he would have to interrogate the jurors in person and would have the responsibility of asking proper questions.[14] Again, after completion of jury selection, the

[13] It is undisputed that the defendant also acted as his own attorney on that occasion, which also resulted in his conviction after a jury trial. The transcript is unclear, however, as to whether the court was aware that the defendant had handled that trial pro se. The statement of the prosecutor was: "I know he proceeded in GA 6 on another case earlier in the year and apparently without a fifty-four-forty taking place prior to that case."

[14] "Mr. Gemeiner: Your Honor, I would like the record to reflect that Mr. Galland said that he will exercise his rights to examine the jurors and he does not want me to participate in that aspect of the case. I am just stating it for the record.

"The Court: Let me just clarify this. You say you don't want your attor-

court asked whether the defendant still wanted Gemeiner to take no active part in the trial and not to examine the witnesses, whether he realized he was waiving his right to have an attorney conduct the trial, and whether he understood the nature of the charges and the possible penalties. To each of these inquiries the defendant emphatically responded in the affirmative.

We conclude that the record sufficiently demonstrates a reasonable basis for the trial court to have been satisfied that all of the requirements of § 961 had been fulfilled and that his waiver of counsel was both voluntary and intelligent. Although a more formal inquiry involving specific consideration of each element of the rule is preferable, our principal concern is not form but substance. Even if there had been an omission, the constitutional right of the defendant to defend himself could not have been denied unless it were shown that his waiver of counsel was involuntary or uninformed. In the analogous situation involving the acceptance of a plea of guilty or nolo contendere we have held that a failure to comply with one element of Practice Book § 711 does not vitiate the plea so long as there has been substantial compliance with the rule and "none of the defendant's constitutionally protected rights has been infringed upon . . . ." *State* v. *Godek,* 182 Conn. 353, 360, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981). The same principle is applicable to deviations from

---

ney to ask any questions of these jurors?

"Mr. Galland: No. But I want him to assist me if I have any questions.

"The Court: And you realize that you are waiving the right to have an attorney do this? This is something you are going to do yourself?

"Mr. Galland: Correct.

"The Court: And you understand that it will be your responsibility to ask proper questions within the scope of the rules of the Court?

"Mr. Galland. Yes.

"The Court: You understand that?

"Mr. Galland: Yes, I understand."

§ 961. Once it is determined that there has been a constitutionally valid waiver of counsel, a defendant cannot be denied his right to try his own case simply because of some insubstantial nonconformity with § 961.

## II

The defendant's claim of ineffective assistance of counsel has three aspects: (1) Gemeiner's performance as his attorney before the case was reached for trial when the defendant elected to represent himself; (2) the failure to grant him a continuance in order to obtain private counsel; and (3) the refusal to appoint another lawyer to represent him when he expressed his dissatisfaction with Gemeiner.

### A

The defendant claims that the conduct of his court-appointed counsel was such that it denied him the effective assistance of counsel and due process of law. He asserts that he was brought to court on June 5, 1981, without prior notice from his attorney that he was going to trial at that time, that his attorney had not shown him the state's response to the defendant's motion (filed by Gemeiner) for discovery and that he was denied a continuance to obtain another attorney. He also argues that Gemeiner's conduct violated certain provisions of the Code of Professional Responsibility. We find that these claims lack merit.

" 'We initially wish to reemphasize that the issue of the adequacy of trial counsel is more properly pursued on a motion for a new trial or on a petition for a writ of habeas corpus, rather than on a direct appeal. See *State* v. *Barber,* 173 Conn. 153, 154–55, 376 A.2d 1108 (1977). Absent an evidentiary hearing on this issue, the claim is extremely difficult to review. See Id.' *State* v. *Just,* 185 Conn. 339, 370–71, 441 A.2d 98 (1981); see

also *State* v. *Mason,* 186 Conn. 574, 577–78, 442 A.2d 1335 (1982)." *State* v. *Scielzo,* 190 Conn. 191, 206, 460 A.2d 951 (1983).

In order to avoid being charged with a deliberate bypass of established appellate procedure, however, a defendant should raise on appeal a claim of ineffective counsel which the record adequately supports. To this extent we must review the defendant's claim. We have said that " 'defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. The defendant's burden is to show that his counsel's conduct fell below that standard and that the lack of competency contributed to the conviction.' " *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1478, 48 L. Ed. 2d 208 (1976); *Siemon* v. *Stoughton,* 184 Conn. 547, 557, 440 A.2d 210 (1981).

The claims made by the defendant focus upon factual circumstances early in the proceedings. The trial court conducted a hearing at which no witnesses testified but at which the defendant, Gemeiner and the state's attorney presented their positions. We have thoroughly reviewed the transcripts touching these matters. On the record available to us, we conclude that the defendant has not sustained his burden of proving that his counsel was incompetent.

### B

We have already narrated many of the circumstances surrounding the defendant's request for a continuance for the purpose of retaining private counsel. The first time such a request was made was on June 8, 1981, before the voir dire of the jurors who had been brought to the courtroom and introduced to the parties at the previous session, June 5, 1981. The defendant said that his family was attempting to obtain another attorney

for him, and that, if he failed to have private counsel by July 12, 1981, he would request appointment of another attorney or would "handle the case pro se and there will be no holdup." The court pointed out that the case had been assigned for trial and that selection of the jury could begin that day; but, since the process would not be completed for several days, if a new lawyer were obtained, he could enter the case before evidence began. A recess was declared before jury selection started so that the defendant could telephone his family. The defendant was told to have his family in court at 2 p.m. so that the court could be informed of their efforts to retain a lawyer and then make a decision about proceeding with jury selection. After the recess the defendant told the court that the family had not come to court. The court again ascertained by inquiry that the defendant did not want Gemeiner to ask questions of the jurors but did want his assistance if he requested it, and that he realized he would have to examine the jurors himself by framing proper questions within the rules of court.

Before the testimony commenced on June 11, 1981, the defendant mentioned that his family had visited him and informed him of their discussions with an attorney who had made some investigation of his case. The name of the attorney was not disclosed and he had not visited the defendant, who was incarcerated, to review the case with him. The defendant did not indicate that there was any prospect that his attorney would enter the case and requested no further continuance for that purpose.

Under all the circumstances the trial court was justified in concluding that the likelihood that the defendant or his family would obtain private counsel in the case was quite remote. A continuance for that purpose, therefore, would only delay the trial and the defendant's request was properly denied.

## C

The final ground advanced in support of the defendant's claim of a denial of his right to counsel is the refusal of the court to appoint another public defender to represent him after he had declined to allow Gemeiner to do so.

A defendant is not entitled to the appointment of a different public defender to represent him without a valid and sufficient reason. *McKee* v. *Harris,* 649 F.2d 927, 931 (2d Cir. 1981), cert. denied, 456 U.S. 917, 102 S. Ct. 1773, 72 L. Ed. 2d 177 (1982); *United States* v. *Calabro,* 467 F.2d 973, 980 (2d Cir. 1972), cert. denied, 410 U.S. 926, 93 S. Ct. 1358, 35 L. Ed. 2d 587, reh. denied, 411 U.S. 941, 93 S. Ct. 1891, 36 L. Ed. 2d 404 (1973). Nor can a defendant compel the state to engage counsel of his own choice by arbitrarily refusing the services of a qualified public defender. *State* v. *Nash,* 149 Conn. 655, 663, 183 A.2d 275 (1962); *State* v. *Reid,* 146 Conn. 227, 235, 149 A.2d 698 (1959). "A defendant with assigned counsel cannot decide for no good cause on the eve or in the middle of trial that he will have another attorney represent him." *United States* v. *Calabro,* supra, 986. The defendant does not claim any such good cause as a conflict of interest or any other irreconcilable conflict which might have handicapped his defense. Id. He does maintain that there was a complete breakdown in communication between him and Gemeiner, a situation which also has been recognized under some circumstances to warrant appointment of new counsel. Id.

Prior to the appointment of Gemeiner, the defendant was represented by another special public defender who had been permitted to withdraw. The defendant's dissatisfaction with Gemeiner seems to have been precipitated by lack of notice, until he was brought to

court on June 5, 1981, that the trial of the case was to begin. The defendant blamed Gemeiner for not notifying him at least one week in advance. Although he made no such complaint on June 5, he did so at the next court session on June 8. Gemeiner conceded that, because he had been on trial in another case, he had had no opportunity to explain to the defendant what was happening in his case or to inform him sooner that it had been reached for trial. He declared, however, that he was prepared for trial. He believed that this "communication gap" had led the defendant to lose faith in the ability of his public defender.

Gemeiner suggested a mental competency examination for the defendant pursuant to General Statutes § 54-40, indicating that the defendant had been very difficult to communicate with and to represent. Apparently, however, there had been extensive discussions with the defendant about the case and there was some disagreement about how the defense should be handled. Gemeiner felt that he could not present the defendant's version of the facts to a jury in a sufficiently convincing manner, and that the defendant was not coherent enough to be able to assist in his defense. He indicated, however, that the defendant had stopped communicating with him only that day.

The defendant strongly rejected any intimation that he was incompetent: "Your honor, it is not that I am incompetent or anything. It is just that I am in disagreement, there is a total breakdown in the relationship between me and my current attorney."

Gemeiner described his problem in representing the defendant as not one of distrust, but of "communicating what the facts are; what he has presented and is confronted with." He thought a psychiatrist should examine the defendant to determine whether his deci-

sion to represent himself was being made by a competent person in view of the gravity of the sentence which might be imposed.

A defendant is not "entitled to demand a reassignment of counsel simply on the basis of a 'breakdown in communication' which he himself induced." *McKee* v. *Harris,* supra, 932. Nor can a pessimistic forecast of the outcome of a trial which may induce a loss of confidence in an attorney provide a sufficient reason for appointment of new counsel. Id. "The constitutional right to counsel does not mean counsel who will be optimistic in his private appraisal of the evidence and his advice to the accused. Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism." *Brown* v. *United States,* 264 F.2d 363, 369 (D.C. Cir.) (en banc) (Burger, J., concurring), cert. denied, 360 U.S. 911, 79 S. Ct. 1299, 3 L. Ed. 2d 1262 (1959). Our review indicates that there was ample communication between attorney and client until the day the defendant decided he no longer wanted Gemeiner to represent him. Although he was understandably irritated by Gemeiner's failure to advise him earlier of the trial date, there is no indication that the defendant was prejudiced in his defense by this oversight. The defendant did not dispute Gemeiner's statement that he was prepared to try the case. The only proceeding which took place on June 5, 1981, was the allowance of the substitute information, the plea of not guilty thereto, and the general introductory remarks to the panel of prospective jurors. Three days elapsed before the trial resumed. The "breakdown" of communications occurred only on that day when the defendant decided he no longer wanted Gemeiner as his attorney. The defendant said he respected Gemeiner, had nothing against him personally, and wanted him to remain in the courtroom during the trial so that he could obtain his advice. Although there evidently was

disagreement about appropriate tactics, there is no indication that Gemeiner ever refused to present the position of the defendant in the light most favorable to him or in accordance with his wishes. We conclude that the defendant had no valid justification for rejecting Gemeiner's services and seeking the appointment of a third special public defender in the case.

## III

The final claim of error is that the court allowed the prosecution to tamper with a defense witness and to influence him not to testify. The defendant had subpoenaed as a witness for the defense Arthur Jaynes who, according to the testimony of a prosecution witness, Conrad Fuller, had participated in the crimes by "casing" the banks before the robbery occurred. Although it does not appear that any charge had been made against Jaynes, the state's attorney advised the court before this witness took the stand that he should be represented by counsel. Apparently the public defender's office had been made aware of the problem previously and had arranged for an attorney to be present to act as a special public defender for Jaynes if necessary. When Jaynes came to court to testify, the court declared a recess to permit him to discuss the situation with this attorney. The result of this discussion was that Jaynes invoked his privilege against self-incrimination and refused to answer any questions related to the robbery.

"It is undoubtedly the better practice for the court to warn the witness as to the constitutional right not to incriminate." *Anderson* v. *State,* 8 Okla. Crim. 90, 113, 126 P. 840 (1912). When it comes to the attention of the court that a witness is to testify in a matter where his own criminality is involved, the court should inform him of his privilege against self-incrimination. *Ex Parte Senior,* 37 Fla. 1, 24, 19 So. 652 (1896); *Gendron* v.

*Burnham,* 146 Me. 387, 396, 82 A.2d 773 (1951); 8 Wigmore, Evidence (McNaughton Rev.) § 2269; 81 Am. Jur. 2d, Witnesses § 50. Although the defendant characterizes as "tampering" the action of the prosecutor in alerting the court to the fact that the witness to be called was the person to whom previous testimony had pointed as an accomplice, we can perceive no impropriety in notifying the court of such a potential violation of a constitutional privilege.

There is no error.

In this opinion SPEZIALE, C. J., PARSKEY and GRILLO, Js., concurred.

ARTHUR H. HEALEY, J., dissenting. I dissent because I cannot participate with the majority in using the record made in the trial court to achieve a result which legal analysis cannot sustain. Unlike the majority, I conclude that the trial court did commit reversible error in permitting the defendant to represent himself at the trial. In short, the record does not affirmatively demonstrate, as it must, a valid waiver of the defendant's constitutional right to counsel.

In the landmark case on waiver of the right to counsel, *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), the United States Supreme Court defined waiver as "an intentional relinquishment or abandonment of a known right or privilege" and counseled that any such waiver should be "intelligent and competent." Id., 464–65. *Johnson,* in requiring that such waivers be intelligent and voluntary, stated that such a determination "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Johnson* v. *Zerbst,* supra. Over the years since *Johnson,* the Supreme Court, although the language may have varied, has consistently con-

firmed this position. *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942) (accused may waive counsel "if he knows what he is doing and his choice is made with eyes open"); *Von Moltke* v. *Gillies,* 332 U.S. 708, 727, 68 S. Ct. 316, 92 L. Ed. 309 (1948) (waiver must be made "competently, intelligently, and with full understanding of the implications"); *Carnley* v. *Cochran,* 369 U.S. 506, 513, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962) (accused must "intelligently and understandingly waive the assistance of counsel"); *Faretta* v. *California,* 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (accused must " 'knowingly and intelligently' forgo those relinquished benefits [associated with the right to counsel]").

In *Faretta* v. *California,* supra, the United States Supreme Court recognized for the first time the independent constitutional right of a defendant in a state criminal trial to proceed without counsel (pro se) when waiver of the right to counsel is knowingly and intelligently made. *Faretta* v. *California,* supra, 807, 835. The *Faretta* majority pointed out that when an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel and it is "[f]or this reason . . . [h]e must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta* v. *California,* supra, 835. This directly invokes the waiver command of *Johnson* v. *Zerbst,* supra.

Practice Book § 961 specifically sets out those crucial constitutional concerns vital to the finding of a valid waiver of the right to counsel by a criminal defendant. It requires that, prior to such a finding, the court make a "thorough inquiry" and be "satisfied" that those concerns articulated by the rule have been met. There is no mandate that a trial court, in discharging this duty, adopt a "precise litany of questions" to be "satisfied."

See *Abney* v. *United States*, 464 A.2d 106, 108 (D.C. 1983). In passing on claims of waiver of counsel, the inquiries need not be so restricted that "the [j]udge [must] mount the bench with a script in his hand." *Sappington* v. *United States*, 468 F.2d 1378, 1380, (8th Cir. 1972). I favor the rejoinder of the Seventh Circuit Court of Appeals to the "pejorative script-in-hand phraseology" of *Sappington* that inquiries under such a rule "require precisely that—not a script, perhaps, but some sort of checklist, as a prompter, so that whatever form the dialogue takes, all of the necessary lines will be delivered." *United States* v. *Fels*, 599 F.2d 142, 149 n.6 (7th Cir. 1979). A "thorough inquiry," however, is necessary. While the provisions of the rule do not completely lend themselves to a purely question and answer format, they eminently furnish the crucial constitutional considerations into which the "thorough inquiry" must be made.

A constitutionally acceptable canvass encompasses not only the direct advisement of the defendant's right to counsel, but an inquiry that elicits from the defendant bases for determining: whether he possesses the intelligence and capacity to appreciate the consequences of his decision to represent himself; his comprehension of the nature of the charges and proceedings, the range of permissible punishments and any additional facts essential to a broad understanding of the case; and that he has been made aware of the dangers and disadvantages of self-representation. This "thorough inquiry" is not restricted, when the circumstances reasonably indicate, to just a colloquy between the judge and the defendant, but the components of that inquiry must appear on the record. The rule contemplates that the court be "satisfied" of certain matters which obviously call for the court to assess information which, in a given case, may not be elicited by a mere question and answer formulation between the court and the

defendant. Such information, considered together with that which does come from such a formulation, includes a trial court's assessment of such matters as the defendant's demeanor and articulation; see *People* v. *Anderson,* 398 Mich. 361, 247 N.W.2d 857 (1976); his prior experience with the criminal justice system; see, e.g., *United States* v. *Bailey,* 675 F.2d 1292, 1302 (D.C. Cir. 1982); *Maynard* v. *Meachum,* 545 F.2d 273, 279 (1st Cir. 1976); and the defendant's "background, experience, and conduct"; *Johnson* v. *Zerbst,* supra, 464.

I agree that appellate courts are interested in substance and not in form. *Spanbauer* v. *Burke,* 374 F.2d 67, 74 (7th Cir. 1966), cert. denied, 389 U.S. 861, 88 S. Ct. 111, 19 L. Ed. 2d 127 (1967); *People* v. *Jackson,* 59 Ill. App. 3d 1004, 376 N.E.2d 685 (1978); *Commonwealth* v. *Fillippini,* 2 Mass. App. 179, 182, 310 N.E.2d 147 (1974); *Pickens* v. *State,* 96 Wis. 2d 549, 292 N.W.2d 601 (1980) (right to counsel cases). But the record itself must demonstrate that substance which establishes that there was a valid waiver of a constitutional right, which "[is] knowing and intelligent, [and] accomplished with sufficient awareness of the relevant circumstances and likely consequences. *Brady* v. *United States,* 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 [1970]; *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 [1938] . . . ." *State* v. *Reed,* 174 Conn. 287, 293–94, 386 A.2d 243 (1978); see *State* v. *Toste,* 178 Conn. 626, 630, 424 A.2d 293 (1979). Indeed, it must be remembered that " '[c]ourts indulge every reasonable presumption against waiver.' " *Johnson* v. *Zerbst,* supra, 464; *Carnley* v. *Cochran,* 369 U.S. 506, 514, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962); *State* v. *Marion,* 175 Conn. 211, 218, 397 A.2d 533 (1978); *State* v. *Bugbee,* 161 Conn. 531, 534, 290 A.2d 332 (1971). Applying the foregoing considerations, I cannot conclude that the record establishes a valid waiver of the defendant's federal constitutional sixth amendment

right to counsel which article first, § 8, of the Connecticut constitution "similarly states." *Palmer* v. *Adams*, 162 Conn. 316, 320, 294 A.2d 297 (1972).

I note that the majority says that "[t]he contention of the defendant that his colloquy with the court was inadequate to satisfy the remaining criteria of Practice Book § 961 for an effective waiver *seems* to rely upon the absence of any ritualistic formal inquiry specifically referenced to [him]." (Emphasis added.) This is not an accurate statement of the defendant's claim. His claim is clear: the record before us from the trial court does not affirmatively demonstrate a valid waiver by him of his constitutional right to counsel under Practice Book § 961. In doing so, he maintains that there was no valid waiver prior to his selection of the jury without the assistance of counsel. In essence, a fair reading of the briefs filed on behalf of the defendant shows beyond question that his claim is not one grounded on lack of form but one clearly aimed at the constitutionally defective "substance" proffered to support the alleged waiver.

Although it is a Practice Book rule and not a statute, the rules of statutory construction are "clearly applicable" to § 961, including the tenet that "[e]very portion of a statute is presumed to have a separate and independent meaning." *State* v. *Cook*, 183 Conn. 520, 521–22, 441 A.2d 41 (1981). Moreover, "[i]t has long been recognized that . . . rules of criminal procedure are to be strictly construed . . . ." *State* v. *Cook*, supra. To conclude that the rule of strict construction does not apply to § 961 would ignore the established law of this state. *State* v. *Cook*, supra. The analysis of the majority opts to forgo that construction.

I agree that in accordance with Practice Book § 961 (1) the defendant was clearly advised of his right to the assistance of counsel. The remaining subsections

of § 961 accommodate themselves to a collective consideration since they involve certain associated constitutional concerns. I disagree with the majority because the record before us from the trial court does not establish that these concerns have been "satisfied."

The majority states that "[b]oth in the trial court and before us [the defendant] appeared to be highly articulate, perceptive and quite capable of protecting his interests." Our function is to review, not to find facts. See, e.g., *Pelc* v. *Danbury,* 166 Conn. 364, 366, 349 A.2d 825 (1974). Therefore, I deem it improper for the majority to use its perceptions and assessments of this defendant from his oral argument before us as any basis for matters that, under every relevant legal consideration, must be in the trial court record which we are to review.

My colleagues say that "[e]ven a casual reading of the transcript" makes it "apparent" that the defendant possessed "the intelligence and capacity to appreciate the consequences of the decision to represent himself." There is nothing in the record, however, concerning his education. The record also discloses that very little of his background, conduct and experience was known or apparent to the court at the time it decided to permit him to conduct the jury selection process. The state indicated that it knew the defendant had "proceeded in GA 6 [New Haven] on another case earlier in the year and apparently without a fifty-four-forty taking place prior to that case."[1] Insofar as this would appear to relate to his experience or conduct the

[1] At that time, the state also said, "I don't know that there is any psychiatric materials as a result of that [prior case] or if there were any problems in that case which might affect these proceedings."

The state was referring to General Statutes § 54-40 which is now encompassed by General Statutes § 54-56d. This statute, which concerns the competency of an accused to stand trial, involves his ability to *understand the proceedings against him or assist in his own defense.*

record does not disclose that this prior experience was developed or inquired of at all toward making a record that this defendant had indeed been through a prior criminal justice experience and should have some appreciation, comprehension and awareness of the problems attending self-representation. There is nothing further at all on the record before the trial judge concerning this earlier criminal case. Additionally, there is absolutely no indication on the record that the trial court took judicial notice of the record of that earlier proceeding.

Moreover, the reference to that prior criminal case came up in the context of his competency to stand trial. In that regard, his own attorney indicated to the court his difficulty in dealing with the defendant, including the statement that "[*the defendant*] *certainly is not capable of assisting me, that's for sure. Whether or not that presents a mental incapacity, I would like a psychiatrist to determine.*" (Emphasis added.) Such a statement, in and of itself, should have triggered the "thorough inquiry" that § 961 requires. It did not.

Noteworthy by its careful silence is the majority's impression that the trial court need not take an affirmative stance, although Practice Book § 961 so requires, in eliciting from a defendant *himself* whether he is knowingly and intelligently waiving the right to counsel which long ago the United States Supreme Court denominated as a right of "peculiar sacredness." *Avery* v. *Alabama,* 308 U.S. 444, 447, 60 S. Ct. 321, 84 L. Ed. 377 (1940). Finding a valid waiver of this right is not a matter of judicial osmosis dredged from a record by "isolated bits and pieces" which, in totality, do not constitute a valid waiver. *United States* v. *Harlan,* 696 F.2d 5, 7 (1st Cir. 1982). The trial court "must make a penetrating and comprehensive examination" to assess the validity of the waiver. *State* v. *Chavis,* 31 Wash. App. 784, 790, 644 P.2d 1202 (1982); see *United*

*States* v. *Welty,* 674 F.2d 185, 189 (3d Cir. 1982); *United States ex rel. Martinez* v. *Thomas,* 526 F.2d 750, 755 (2d Cir. 1975).

The question "ultimately is [one of] the *subjective* understanding of the accused rather than the quality or the content of the explanation provided, [and] the court should question the accused in a manner designed to reveal [*his*] *understanding.*" *State* v. *Chavis,* supra; see *United States ex rel. Miner* v. *Erickson,* 428 F.2d 623, 636 (8th Cir. 1970). Even the best that can be done with the facts here does not establish, consistent with the *Johnson* v. *Zerbst* standard, that subjective understanding by this defendant of those constitutional protections he is "waiving." The constitutional imperative is that the defendant *understand* before he *decides* to waive. Justice Holmes once said that "constitutional law like other mortal contrivances has to take some chances . . . ." *Blinn* v. *Nelson,* 222 U.S. 1, 7, 32 S. Ct. 1, 56 L. Ed. 65 (1911). Holmes, however, said that in a civil, and not a criminal, case. I submit that where the waiver of the right to counsel is involved, that chance should not be taken.

Section 961 (2) speaks to the "intelligence" of a defendant. " 'Intelligence' requires [a] recognition of the constitutional right, while 'abandonment' signifies *conscious* relinquishment." (Emphasis added.) *United States* v. *Thevis,* 84 F.R.D. 57, 72 (N.D. Ga. 1979), cert. denied, 459 U.S. 825, 103 S. Ct. 57, 74 L. Ed. 2d 61 (1982). Section 961 (2) also speaks to a defendant's "capacity to appreciate the consequences of the decision to represent himself." To "appreciate" a consequence or circumstance connotes a judgment or decision made with heightened perception or understanding. See Webster's Third New International Dictionary. In this context, "appreciate" means more than mere abstract knowledge of a relevant consequence or circumstance; knowledge alone, divorced from an

appreciation of that knowledge, brings little impact upon a meaningful evaluation of that knowledge by a defendant. Moreover, such an appreciation can hardly be found if a defendant has not been made aware of the dangers and disadvantages of self-representation as required by § 961 (4), which, of necessity, also includes a "thorough inquiry" of his comprehension of the charges, the proceedings, the range of permissible punishment, and any additional facts fairly essential to a broad understanding of the case by him under § 961 (3). In this constitutional inquiry, a trial court can be "satisified" that a particular defendant has validly waived his right to counsel only where that defendant is found to be a person who can properly appreciate the consequences of an informed decision which, in turn, involves a demonstrated awareness of what that choice means to him in the context of the particular proceedings.

The mere objection by the defendant to the filing of the substituted information, his objection to the composition of the jury panel, his request for a continuance and his request for copies of "his" motions (none of which he had filed and all of which had been filed by his attorneys), along with his post jury selection requests, which occurred *after* the alleged waiver, provide little support for the majority's "indelible impression" left by the transcript that the defendant "was highly sophisticated for a lay person in his knowledge of criminal law and procedure." It is what the defendant "truly understood"; *Piankhy* v. *Cuyler,* 703 F.2d 728, 732 (3d Cir. 1983); not his alleged "sophistication" which goes to the core of a valid waiver.

I do not find that the requirement of § 961 (3), that there be a comprehension of "the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case" was "satisfied." I have difficulty

accepting the majority's application of *Henderson* v. *Morgan,* 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976), where the United States Supreme Court said, in a case involving the validity of a guilty plea, that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson* v. *Morgan,* supra, 647. In *Henderson,* an essential element of the crime was not explained to the defendant either by his attorney or in the court's canvass of his plea. An expansion of this narrow presumption, used in the context of guilty pleas, to establish, inter alia, the defendant's comprehension of any fact relating to a broad understanding of the case substantially swallows up the constitutional inquiries required by § 961.

Much stress is also laid on the claim that the defendant was "fully aware" that he was charged with two counts of robbery in the first degree and that his attorney twice mentioned that these crimes carried a "penalty of 20 to 40." Once again, there is no indication of any "thorough inquiry" by the court into the defendant's understanding to justify the statement that he was "fully aware." For example, nothing appears in the record about whether guilty verdicts could or would possibly result in consecutive sentences or what effect his prior record might have on punishment. One court, in conceding that the defendant "may well" have been aware of the range of permissible punishments he faced because he had four prior felonies and was presently serving a state penitentiary sentence, set aside an alleged waiver of his right to counsel saying that "none of [those] conjectures [was] confirmed by the record." *United States* v. *Gipson,* 693 F.2d 109, 112 (10th Cir. 1982), cert. denied, 459 U.S. 1216, 103 S. Ct. 1218, 75 L. Ed. 2d 455 (1983). The same applies in this case. The scant admonitions by the court concerning the defend-

ant's selection of the jury hardly "brought home" to him the critical nature of that stage of the proceedings. See *State* v. *Chavis,* supra.

Finally, I also cannot conclude that the trial court record establishes that the defendant had "been made aware of the dangers and disadvantages of self-representation." Practice Book § 961 (4). At the trial, the state certainly alerted the court that the defendant "has to be informed and told the rights he gives up or the problems that develop with a pro se representation as opposed to an attorney; the type of things that he would not be aware of that attorneys might and so on." The majority maintains that this "certainly alerted" *the defendant* that he would be giving up his right to experienced counsel and would "encounter problems" of which only an attorney would be aware. Again, the relevant constitutional consideration is not what "alerted" the defendant, not some conjectural subliminal prompting to him, but what the record actually shows *he understood* he was giving up. *Faretta* v. *California,* supra.

"Obviously, the Constitution does not require a trial judge to give an insistent pro se defendant a short course in criminal law and procedure; a defendant's 'technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself.' " *Hsu* v. *United States,* 392 A.2d 972, 984 (D.C. 1978), quoting in part from *Faretta* v. *California,* supra, 836. The constitutional concerns, however, that are admittedly in § 961, require a "thorough inquiry" which must appear on the record. This record falls far short of this. To conclude otherwise is judicial blinking at the mandate that the record establish that the defendant " 'knows what he is doing and his choice is made with eyes open.' " *Faretta* v. *Califor-*

*nia,* supra, 835, citing *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942).

Therefore, I dissent and would order a new trial.