[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner filed an amended petition for writ of habeas corpus on November 2, 1991, alleging that his incarceration is illegal under both the state and federal constitutions CT Page 2196 because his trial attorney provided ineffective assistance of counsel. He is challenging his conviction of one count of burglary in the second degree and one count of larceny in the second degree. Specifically, Siano alleges that trial counsel rendered ineffective assistance of counsel by failing to call as a witness Dr. Victor Panitch, an orthopedic surgeon who had treated the petitioner for his injuries suffered in a motorcycle accident that occurred less than four weeks prior to the date of the offense in question.
The petitioner had been charged with one count of burglary in the second degree, in violation of C.G.S. 53-a-102, and one count of larceny in the second degree, in violation of C.G.S.53a-123. The charges stemmed from a burglary that occurred at a home in Enfield, Connecticut, on May 25, 1986.
According to the testimony presented at the petitioner's trial, the perpetrators entered the home through a kitchen window located in the back of the house. The back yard was surrounded by a wooden stockade fence. The state's best evidence was the testimony of Carmine Sarno who allegedly participated in the burglary with the petitioner.
Mr. Sarno testified that on the night of the burglary, he picked up the petitioner and drove them to the scene of the crime. According to him, Siano had "checked out" the area a day or two earlier. Sarno told the jury that he entered the house through a kitchen window located in the back of the house and then opened a sliding glass door and let the petitioner inside. Once they were both inside, they split up. The petitioner went upstairs. According to Sarno, the petitioner discovered computer equipment upstairs. Sarno carried the equipment out of the house. He testified that as he departed the house with the computer equipment, the petitioner was right along side of him and accompanied him out. When they left the house, they went to the petitioner's home in Springfield, Massachusetts. The petitioner took the computer equipment with him into the house. Sarno further stated that Siano carried the equipment by himself. Evidence disclosed that the computer was an IBM model XT personal computer. The computer consisted of four main parts, including a dot maker printer, a key board, a monitor and the main body. A modem was also among the items stolen. The computer equipment was presented by the state at the petitioner's trial and was noted by the court to be "heavy equipment".
Sarno previously had been convicted of other burglaries including a burglary in Connecticut for which he received a sentence of five years, suspended after two years. He was awaiting sentencing in Massachusetts on other burglary charges for which he was facing a maximum term of eighty to ninety years. CT Page 2197 During cross examination of Sarno, it was established that in consideration of his testimony against the petitioner, the charges against him arising from the same offense were nolled. In addition, a Connecticut sentence he was serving was modified advantageously.
The petitioner had been injured in a motor vehicle accident on April 28, 1986. He had sustained a "displaced fracture of the left distal radius", a "fractured right metatarsal head" and multiple abrasions about his body. The burglary occurred approximately four weeks after the accident.
The defense presented two witnesses, Siano's mother and sister. Both were called to discuss the petitioner's injuries. Mrs. Siano testified that her son "was disabled completely" when he came home from the hospital on May 1, 1986 and that he needed to use crutches to walk. According to her the petitioner used the crutch for "more than six weeks" after the accident. The petitioner's sister testified that the petitioner had a broken arm, a broken foot and massive scrapes over his body.
The petitioner was convicted after trial and sentenced to a term of seven years consecutive to a sentence of eighteen to twenty years to serve in Massachusetts. He is still serving the Massachusetts sentence.
Mr. Siano had provided his lawyer, Charles Hines, with the name of his orthopedic surgeon, Dr. Victor Panitch of Holyoke, Massachusetts, as well as the hospital where he was confined for about three days following the accident. Hines obtained the hospital discharge summary[1] and a letter from Dr. Panitch.[2]
Counsel testified that he saw a substantial difference between the discharge summary and the doctor's letter that would somehow weaken the testimony of the doctor if he were presented as a witness. Although Mr. Hines and his investigator testified that they had talked to the doctor over the phone, the so-called "difference" between the discharge summary and the letter was never discussed with the doctor. Hines did testify that the doctor told him he was willing to testify in spite of the fact that the petitioner had not paid his doctor's bill. The petitioner's medical records were not introduced at trial.
Trial counsel indicated in his opening remarks to the jury that Dr. Panitch would testify for the defense. In fact, the evidence indicates unequivocally that Mr. Hines fully intended to present the doctor, until it became apparent at the time the testimony was needed that the doctor was unavailable. According to counsel's own testimony and as supported by the transcript, the decision not to call Dr. Panitch was finalized just prior CT Page 2198 to the defense resting its case.[3]
Attorney Hines never issued a subpoena for the doctor although 54-84i(c) of our statutes makes provision for commanding out-of-state material witnesses to appear for the trial of criminal cases.
The theory of the defense was that Siano did not commit the crime and that his physical condition at the time thereof made it highly unlikely for him to have participated in the burglary. The issue is whether or not the trial attorney's failure to present the testimony of the treating physician denied the petitioner his right to the effective assistance of counsel. It is the conclusion of the court that it did.
To proceed to a consideration of the issue, the court must be satisfied that the Petitioner alleged and proved by a fair preponderance of the evidence that he did not deliberately bypass the avenue of direct appeal. "[A]ny claim invoking ineffective assistance of counsel automatically satisfies the deliberate bypass requirement." Valeriano v. Bronson, 209 Conn. 75,85 (1988) as cited in Tyson v. Warden, 24 Conn. App. 729,733 (1991). Hence, the deliberate bypass rule has been satisfied.
Article first, Section 8 of the Constitution of the State of Connecticut as well as the sixth amendment to the Constitution of the United States of America guaranty that in all criminal prosecutions a defendant is entitled to the effective assistance of counsel. To prevail on a claim of ineffective assistance, the petitioner must prove that his trial counsel failed to meet the two-pronged performance standard articulated in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudices the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable . . ." Id. at 687.
The first prong of the Strickland test requires inquiry into "whether counsel's assistance was reasonable considering all the circumstances" Id. at 688. Every effort must "be CT Page 2199 made to eliminate the distorting effects of hindsight. . ." Id. at 689. Counsel's conduct must be evaluated from his or her perspective, "viewed at the time of counsel's conduct." Id. at 689-90. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id., at 690.
The second prong of the Strickland test requires that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id., at 692. A defendant's affirmative burden is to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 693. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694.
The court is satisfied that the petitioner has satisfied both prongs of the Strickland standard.
The testimony of Dr. Panitch was critical to establish a claim that, because of his physical condition, it was unlikely that the petitioner committed the offense. Rather than the testimony of the mother and sister to present a credible defense, the situation clearly warranted the presence of the doctor. Dr. Panitch was not related to Mr. Siano. He had the medical facts and information. He possessed excellent credentials. The petitioner presented Dr. Panitch as a witness for the habeas corpus hearing. The court had the opportunity to observe his demeanor, his appearance, his ability to relate and communicate facts. He made an excellent witness. According to him, Siano had sustained a severely comminuted and displaced fracture of the left wrist, a fracture of a bone in the foot and road burns. He was hospitalized three days. Treatment of the wrist required that Siano be administered general anesthesia so that the bones could be positioned. Once positioned, Siano was wired and casted, the cast extending from just below the elbow down to the knuckles. The wrist was rendered completely immobile. The cast would have remained in place for six to eight weeks. As for the foot, the doctor stated that four weeks post injury, the patient could walk with some difficulty and "could limp at a reasonable rate".
The doctor's testimony would have given the defense's claims credibility. With that credibility present, the issue of the unlikelihood of Siano's participation in the burglary well could have risen to the level of a reasonable doubt. Without the testimony of Dr. Panitch, the jury was left wondering about the true extent of the injuries suffered by the petitioner in the motorcycle accident. The testimony of Sarno that the CT Page 2200 petitioner carried heavy computer equipment from Sarno's car into the petitioner's house without any assistance and his testimony about Siano's having cased the neighborhood and negotiated stairs was not otherwise credibly impeached.
Mr. Hines suggested that the reason for not calling the doctor was a strategic decision based upon his conclusions that the doctor would be a reluctant witness and that his perceived difference between the discharge summary and the doctor's letter would render the doctor's testimony harmful. The court does not find there was any reasonable basis for the attorney's conclusions. In addition to the findings previously set forth, the court cannot ignore the fact that counsel told the jurors that Dr. Panitch would testify.
 "For ourselves, we might have no quarrel with counsel's decision to call, or not to call, as a strategic decision, had that matter stood alone. But counsel's choice was not made in that parameter. The choice was made in the positive of the jurors having heard, only the day before that a psychiatrist and psychologist would testify . . . and now they would not do so-surely a speaking silence." Anderson v. Butler, 858 F.2d 16, 18 (1st Cir. 1988).
Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. Siemon v. Stoughton, 184 Conn. 547 554 (1981) . . . The burden of proof is upon the petitioner to show that his trial counsel's performance fell below that standard. State v. Gethers, 193 Conn. 526
(1984). Tyson v. Warden, 24 Conn. App. 729, 737 (1991).
It is well settled that defense counsel may not "completely ignore easily obtainable information that appears to be of significant value when the risks of proceeding without such information are substantial." United States Ex Rel. Cosey v. Wolff, 562 F. Sup. 140, 145 (1983), citing United States v. Decoster, 624 F. Sup. 196, 211 (D.C. Cir. 1976). In the instant matter, the petitioner's defense rested on showing that, because of the serious injuries suffered by the petitioner a few weeks before the burglary, it would have been impractical or extremely difficult for him to have participated in the burglary. The testimony of Dr. Panitch could have cast significant doubt on Sarno's testimony. In a similar case, Garza v. Wolff, 528 F.2d 208
(ith Cir. 1975), the court found that trial counsel's failure to call as a witness an individual who would have significantly strengthened the petitioner's defense required the granting of his petition for a writ of habeas corpus.
The petitioner also alleged that trial counsel rendered ineffective assistance by failing to seek a dismissal of the CT Page 2201 charges based upon the state's failure to comply with the terms and conditions of Connecticut General Statute Section 54-186
and its federal counterpart, 18 U.S.C. Appx., Interstate Agreement on Detainers. At the time that Connecticut lodged charges against the petitioner for the Enfield burglary and larceny case, he was serving an unrelated sentence in Massachusetts. The crux of the petitioner's claim is that the state failed to secure a final disposition of the pending Connecticut charges against him within the time frame provided for by the Interstate Agreement on Detainers. He argued that the words "brought to trial" in Section 3 of the law mean "tried, convicted and sentenced". His claim rested upon the fact that at the time his Connecticut case was pending, there was a federal court decision allegedly supporting this claim;[5] that this case was the only one interpreting "brought to trial"; that Connecticut had no state court decisions dealing with the issue; that because the Interstate Agreement on Detainers Law is a Congressional statute adopted by the State of Connecticut, federal court analysis controls; that trial counsel should have researched the issue, found the case and presented a motion to dismiss based upon the fact that although trial had commenced within the one hundred eighty days the final disposition had not occurred within that time frame.
The Respondent moved to dismiss the I.A.D. claim at the close of evidence. This Court granted the motion, concluding that the evidence was insufficient to prove that the trial attorney's failure to find that case and make the motion to dismiss did not fall below an objective standard of reasonableness.
With respect to his failure to produce Dr. Panitch, however, trial counsel's performance was not reasonably competent. It is reasonably probable that, but for counsel's unprofessional errors, the jury's verdict would have been different.
It is the judgment of the court that the conviction be vacated and that the petitioner be accorded a new trial.
SCHEINBLUM, J.