Louis LYLES, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 81–2106
Summary Calendar.

United States Court of Appeals, Fifth Circuit.*
Unit A

Oct. 9, 1981.

Louis Lyles, pro se.

Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge:

Appellant, a Texas state prisoner, is here on appeal from a district court's denial of a writ of habeas corpus, the most significant ground asserted being a denial of his Sixth Amendment right to self-representation. Because this court finds that such writ was inappropriately denied, we reverse and remand for further proceedings not inconsistent with this opinion.

## COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURTS BELOW

Appellant, Louis Lyles, was originally indicted for the offense of auto theft, together with two prior felony theft convictions alleged for enhancement. In return for the State's dismissal of the enhancement paragraphs, Lyles plead guilty and was sentenced to ten years imprisonment. That conviction was subsequently reversed by the Texas Court of Criminal Appeals because the form of indictment used to charge the offense for which Lyles was convicted was fundamentally defective. *Reynolds v. State*, 547 S.W.2d 590 (Tex.Crim.App.1977).

In compliance with *Reynolds*, the State later reindicted Lyles. In addition to the theft and two priors for enhancement, the reindictment was modified to include the unauthorized use of a motor vehicle (also a felony). Lyles once again was offered the deal whereby the State would dismiss the enhancement paragraphs in exchange for a guilty plea. This time, however, the offer was refused and a plea of not guilty was entered. The State moved to dismiss the theft count and, after a jury trial, Lyles was found guilty of unauthorized use. The court found the enhancement paragraphs to be true and assessed punishment at life imprisonment. On appeal, the conviction was affirmed. *Lyles v. State*, 582 S.W.2d 138 (Tex.Crim.App.1979).

Thereafter, Lyles filed the instant application for writ of habeas corpus in federal district court alleging seven grounds for relief.[1] After considering each ground, the court adopted the findings, conclusions and recommendation of the magistrate and dismissed the application for failure to state a claim upon which relief could be granted.

In his present appeal, Lyles reurges all grounds presented to the court below. In granting the writ, however, this court is

---

1. Appellant asserted that (1) the trial court erred in denying petitioner's motion to dismiss his court-appointed counsel and substitute counsel where a conflict between petitioner and his counsel had developed; (2) the trial court erred in denying petitioner's motion to dismiss his court-appointed counsel and in refusing to let petitioner represent himself; (3) petitioner was denied fundamental fairness and due process because the prosecutor commented on the failure of the defense to call witnesses and offer evidence in its behalf; (4) petitioner was denied the right to present witnesses in his behalf who had first-hand knowledge of the incident; (5) petitioner was denied fundamental fairness and due process of law because the prosecutor made improper references to theft of the automobile after the theft charge had been withdrawn; (6) petitioner was subjected to vindictive reindictment after obtaining a reversal of his original conviction; and (7) the mandatory life sentence imposed under § 12.42 of the Texas Penal Code constitutes cruel and unusual punishment in that it is grossly disproportionate to the severity of his crime(s).

limiting its discussion to the denial of appellant's right to self-representation for purposes of judicial economy.

### Facts

Prior to the trial, Lyles filed a motion with the court seeking to have his court-appointed attorney, Mr. Rosch, dismissed claiming that Rosch was unwilling to see appellant in person to discuss the case. Lyles also asserted that the degree of animosity between the two parties rendered Rosch's aid ineffective. After entertaining oral argument on the point, the first trial judge denied the motion to dismiss but ruled that Lyles could represent himself provided Mr. Rosch remained present at trial in an advisory capacity.

His case was apparently sent to another judge for trial where he attempted to renew the original motion before the new court. Seeing that the matter had already been decided by his predecessor, the court attempted to summarily dispose of the request. Lyles then contended that he was being denied his right to counsel. The court adamantly refused to appoint new counsel, but gave Lyles a choice—he could either proceed with Rosch as his court-appointed attorney or he could choose to represent himself:

THE COURT: Now, do you have anything to say to say to the Court about that?

THE DEFENDANT: We have been arguing the fact for the last two months about counsel.

THE COURT: Well, I don't want to know about how long you argued, all I want to know is do you want counsel here today?

THE DEFENDANT: I'm not accepting this counsel, no, sir.

THE COURT: You don't have to accept him so far as that is concerned, but I want to tell you now that you don't have the right to be represented by counsel and also to represent yourself.

You can not have both, although in any sort of event, the Court will require counsel to remain in the courtroom.

Now, you have the constitutional right to waive counsel.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: But you cannot waive counsel unless the Court is satisfied first that you are competent to exercise a waiver of counsel which is a fundamental right and one of the most important rights of a person charged with the commission of a crime in the trial of this case to exercise in the trial of this case.

And, any waiver of that right must be based upon, first, your competency to arrive at an intelligent decision as to whether to waive them or not.

And, if you are competent to do that, then the Court must be satisfied that your waiver is intelligent and it is voluntary and that you understand fully the consequences about it.

If the Court approves any such waiver, then the responsibility will be yours.

Mr. Rosch was then asked to take the stand where he opined that Lyles was both competent to represent himself and fully aware of the impact of waiver of counsel. He further admitted that he had been unable to have intelligent discussions with appellant regarding the factual issues involved in the case.

It was then Lyles' turn to be questioned. Information elicited from him included the fact that he was 35 years old, had a 10th grade education, and was unaware of any physical or mental deficiencies which might impair his judgment. When questioned about his earlier insistence on self-representation, the following colloquy took place:

THE COURT: Now, Judge Moore granted your right to represent yourself. I want to double check that that's correct; isn't it?

MR. WILSON: Yes, sir, he's been at least twice—

MR. ROSCH: Yes, sir.

THE COURT: I understand he's fully admonished you and advised you about matters that you should take into consideration in arriving at a waiver of the right to counsel.

THE DEFENDANT: Excuse me, your Honor. He has not said that. What I asked him was that he dismiss this counsel and appoint me to someone else. He denied this and I said I would represent myself. If I am going to be denied a lawyer or legal counsel in the courtroom, then I will represent myself because I will not go to Court with Mr. Rosch.

That was the argument. That was what was said.

THE COURT: Let me tell you something right now. I don't mean to be harsh with you in the slightest degree, but you are going to go to trial.

THE DEFENDANT: Yes, sir.

THE COURT: And, you can go to trial as this Court now decides representing yourself or accepting Mr. Rosch as your counsel and you don't have to accept him.

The Court appoints him. Now, are you still of the notion that you can't have your own counsel, or if you can't force the Court to appoint counsel of your selection, then you don't [word omitted] any counsel?

Is that your proposition?

THE DEFENDANT: That's right, sir.

The Court then proceeded to ask Lyles a number of questions concerning the formalities of procedure and evidence, to which appellant gave reasonably intelligent layman's answers.[2] At the conclusion of this line of questioning, the court stated that:

it's obvious to me that this person is not of sufficient understanding to exercise his rights with respect to decide whether he should accept or reject counsel because obviously he doesn't know the most fundamental and rudimentary matters concerning the trial of a case.

And, therefore, this Court would be uneasy as to any waiver he may attempt to exercise.

Therefore, I hold that the waiver has not been intelligent and not been knowingly with respect to the consequences of his waiver.

The Court then indicated that further discussion of the matter was not to be tolerated. Treading dangerously, Lyles ventured to add the following as a final comment:

I only have one thing to say and that is that I am being forced to take this counsel if you are going to try this case.

. . . .

. . . I'm saying this:

That if this goes to trial with this lawyer, it is not by my choosing. It is by force because I do not wish to go to trial with this counsel. I will have nothing to say while the trial is going on after I say this.

I don't want anything to do with the trial.

The trial then proceeded with Mr. Rosch representing appellant.

## DISCUSSION

The right of self-representation has long been protected in the federal courts by statute.[3] It was not until *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), however, that the Supreme Court held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so.[4]

---

2. Although appellant has had no formal legal training, his numerous convictions indicate that he is no stranger to the legal system.

3. 28 U.S.C. § 1654 (1977).

4. The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails. *Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562, 572–73 (1975).

In the instant case, appellant contends, *inter alia*, that he is entitled to habeas corpus relief under the theory that he was erroneously denied his right to self-representation. We are inclined to agree. Appellee, however, asserts three different theories as to why such relief should be denied: (1) that appellant failed to clearly assert his Sixth Amendment right to represent himself; (2) alternatively, that the waiver of counsel was not "knowingly and intelligently" made; and (3) that appellant had no valid reason to dismiss his court-appointed counsel. For the reasons set forth below, this Court finds none of these reasons persuasive.

In the past this circuit has held that because a decision to defend pro se may jeopardize a defendant's chances of receiving an effective defense, and because a pro se defendant cannot complain on appeal that his own defense amounted to a denial of effective assistance of counsel, courts have required that the demand to defend pro se be stated unequivocally. *Chapman v. United States*, 553 F.2d 886, 892–93 (5th Cir. 1977). *See also Faretta v. California, supra*, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541, n. 46, 45 L.Ed.2d at 581.

Appellee's claim that there was no affirmative waiver of counsel is conclusory and inconsistent with this court's interpretation of the record. Within one week after the original court appointed Mr. Rosch counsel, Lyles moved to have him dismissed. Although denied, the court ruled that appellant could represent himself if Mr. Rosch was retained in an advisory capacity. Upon reindictment, Lyles once more sought to have Mr. Rosch removed, or, in the alternative, to represent himself. While it is true that appellant did not file a motion requesting such, his intention, as evidenced by the record, could not have been more clear. Indeed, had Lyles been any more emphatic it is likely that he would have been held in contempt.

With respect to the assertion that the waiver was not "knowingly and intelligently" made, this too is erroneous. "The determination of whether there has been an intelligent waiver must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). In its examination of Lyles, the trial court elicited such information as the fact that he was 35 years old, had a tenth-grade education, and was unaware of any physical or mental deficiencies which might impair his judgment. The record also indicates that appellant was informed that he would have to bear the consequences of his action, and that he was aware of the impact his waiver would have. It was not until the court began questioning Lyles about his familiarity with the formalities of the rules of evidence and procedure that things began to snag. Despite Lyle's reasonably intelligent responses in layman's terms, the court ruled that his lack of proficiency negated a "knowing and intelligent" waiver. Such grounds for denial are clearly improper.

As the Supreme Court had occasion to note: "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California, supra*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–82. *See also Scott v. Wainwright*, 617 F.2d 99, 102 (5th Cir. 1980), *cert. denied*, 449 U.S. 885, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980). The record indicates that Lyles was aware of the implications of his decision; to also require a lawyer's expertise as a prerequisite to asserting the right would deny it to all but a small portion of society.[5]

---

5.  It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized if at all, only imperfectly. To force a lawyer

Finally, appellee contends that relief should be denied on the basis that Lyles had apparently no reason for dismissing his court-appointed counsel. The record, however, does indicate that friction existed. When questioned on the matter, both Lyles and Rosch informed the Court as to their inability to sit down and intelligently discuss pertinent matters concerning the case. There were also some questions about Mr. Rosch ignoring appellant's instructions.[6] While under normal circumstances counsel is to be afforded wide latitude in developing trial strategy, Mr. Rosch was forced upon appellant.

> To thrust counsel upon the accused, against his considered wish, thus violates the logic of the [Sixth] Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. [citations omitted] This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

*Faretta v. California, supra,* 422 U.S. at 820–21, 95 S.Ct. at 2533–34, 45 L.Ed.2d at 573–74.

█ It should be noted that even though we have done so here, the pointing out of reasons why one might desire self-representation is not a pre-requisite for relief. A defendant in a criminal trial has a constitutional right to proceed without counsel as long as he voluntarily and intelligently elects to do so.

Having found appellee's arguments against granting habeas corpus relief unpersuasive with respect to the denial of Lyles' right of self-representation, we find it unnecessary to consider appellant's alternative theories. The judgment of the district court dismissing appellant's motion to grant him the Great Writ is reversed and this case is remanded to the district court to grant such writ and order the state to retry the defendant, Lyles, within a certain reasonable time.

### REVERSED and REMANDED.

---

on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 2540–41, 45 L.Ed.2d 562, 581 (1975).

6. One complaint voiced by Lyles was that his court-appointed counsel had ignored his request to challenge the indictment, including the enhancement counts. A second dispute arose over whether or not to call a witness whom Lyles believed to be valuable for impeachment purposes; the witness was not called.

It is wholly irrelevant whether the result of Lyles trial might have been different had Rosch complied with Lyles' wishes.

> The nature of the right to defend pro se renders the traditional harmless error doctrine peculiarly inapposite. Unlike other constitutional rights, the right to represent oneself is not "result-oriented." ... we recognize the defendant's right to defend pro se not primarily out of the belief that he thereby stands a better chance of winning his case, but rather out of deference to the axiomatic notion that each person is ultimately responsible for choosing his own fate, including his position before the law. A defendant has the moral right to stand alone in his hour of trial and to embrace the consequences of that course of action.

*Chapman v. United States,* 553 F.2d 886, 891 (5th Cir. 1977).