# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1614

_____

Eugene Kenneth Jones,

        Appellee,

v.

Jeff Norman,[1]

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Eastern
District of Missouri.

_____

Submitted: December 15, 2010
Filed: February 14, 2011

_____

Before RILEY, Chief Judge, BEAM and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

The State of Missouri ("the State") appeals the district court's[2] grant of the writ of habeas corpus to Eugene Kenneth Jones–an inmate serving a thirty-year sentence in prison following his conviction in Missouri state court. In its order granting

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Jeff Norman, the current Warden of the Southeast Correctional Center and successor to Troy Steele, is substituted as party appellant.

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

habeas relief, the district court found that the Missouri court that presided over Jones' trial violated clearly established Supreme Court law by denying Jones' request to represent himself.  The State argues that habeas relief is inappropriate because Jones procedurally defaulted his self-representation claim and, alternatively, that the claim fails on the merits because Jones did not knowingly and voluntarily waive his right to counsel.  We affirm.

## I.    BACKGROUND

On May 24, 2001, St. Louis Police Department officers pulled Jones over and arrested him based on probable cause that he committed an armed robbery that had occurred minutes earlier in a gas-station parking lot.  On July 3, 2001, Jones was charged in Missouri state court with first-degree robbery, armed criminal action, and unlawful use of a weapon.  On August 16, 2001, Jones filed a Faretta motion, seeking to exercise his Sixth Amendment right to represent himself at trial.  See Faretta v. California, 422 U.S. 806 (1975).  On September 5, 2001, the trial court held a hearing on Jones' motion.  At the hearing, the court informed Jones that it would be considering his "base level of competency" to represent himself and whether his request to do so was "knowing and voluntary."

The trial court began the hearing by asking Jones a series of questions about his background, education, and experience with the legal system.  The court then asked Jones if he had any physical or mental impairments. Jones stated that his right arm was numb because of a stab wound he suffered in jail and that he had been making weekly visits to the jail psychologist for a couple months.  When asked whether his arm would impact his ability to take notes, Jones said that he was able to write but that the numbness would likely slow him down.  When asked for details about his mental health treatment, Jones told the court that he had never been diagnosed with any mental disease or defect and that he had never visited a

psychiatrist or psychologist prior to his incarceration. No additional evidence on Jones' mental state was presented.

During the hearing, Jones stated that he understood the potential consequences of representing himself and that his request to do so was totally voluntary. The trial court then asked Jones questions about his knowledge of the upcoming proceedings. Jones said that he understood the charges against him and he was able to identify all three counts he faced. The court asked whether Jones knew the possible penalties associated with those charges. Jones correctly stated the penalty range for count one, but misstated the minimum penalty for count two, and admitted he did not know the penalty range for count three. The court then asked Jones to identify the consequences of his being charged as a prior and persistent offender. He was able to identify only one specific consequence. When asked about additional consequences, Jones responded that he was generally aware that the designation had other negative consequences but that he did not know the details. The trial court also asked Jones about his familiarity with the Missouri Rules of Criminal Procedure. Jones stated he was aware the rules existed and that he would have to comply with the rules, but that he was not currently familiar with their substance.

When asked why he wished to represent himself, Jones told the court that he had bad experiences with appointed lawyers in previous cases and that he was dissatisfied with the efforts of his current lawyer, Michael Meyers. Jones stated that, although Meyers did seem to care about Jones' case, Jones himself cared more and therefore would put forth more effort to "seek out what's best" for himself.

On September 7, 2001, the trial court issued an order denying Jones' motion to proceed pro se, reasoning that Jones' waiver was not "knowing and intelligent" because: (1) Jones had "never even familiarized himself with the applicable rules of procedure;" (2) he had "only an 11th grade education;" (3) he had a "reduced physical ability to take trial notes" and; (4) he did not know the relevant ranges of punishment

for two of the three charges against him. The order stated that, if Jones had understood the potential consequences of his request to represent himself, "he had notice of and time to prepare for the above hearing."

On January 20, 2003, Jones filed a motion for new counsel and renewed his request to proceed pro se.   The court denied his motion for new counsel.  The court never ruled on his renewed request  to proceed pro se.  After a jury trial, Jones was convicted on all counts and sentenced as a prior and persistent offender to thirty years in prison.

Jones' lawyer filed a motion for new trial, but did not include an objection to the court's denial of Jones' Faretta motion.  After Jones' motion for new trial was denied, he appealed to the Missouri Court of Appeals.   His sole argument on direct appeal was that the trial court erred by denying his request to proceed pro se.  After reviewing the factors the trial court had considered, the Missouri Court of Appeals concluded that the trial court had committed "no error plain or otherwise" and denied Jones' appeal.

Jones was incarcerated at the Southeast Correctional Center in Charleston, Missouri.  On May 11, 2006, Jones filed a petition for the writ of habeas corpus in federal district court, alleging, inter alia, that the state trial court erred by denying petitioner's motion and request to proceed pro se without counsel.  On June 7, 2006, the State was ordered to show cause why relief should not be granted.  In response, the State argued that Jones' Faretta claim was procedurally barred because he did not raise it in his motion for new trial and that, alternatively, the claim failed on the merits.  On November 8, 2006, Jones filed an amended petition for habeas relief. This petition replaced, in total, his original petition and raised eighteen counts, including his Faretta claim, which became count fifteen.  The district court referred Jones' amended petition to the magistrate judge, who issued an order that required the State to file a new response to Jones' amended petition and specifically instructed the

state to readdress "the merits . . . **in addition to any procedural default issues which may be relevant**." (emphasis in original). The State filed a response, arguing that counts one through fourteen were procedurally defaulted but explicitly arguing that the court should consider and reject the merits of Jones' <u>Faretta</u> claim under the deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

On August 25, 2009, the magistrate judge recommended that Jones' petition be denied in its entirety, finding that the majority of Jones' claims had been procedurally defaulted and that the rest, including Jones' <u>Faretta</u> claim, failed on the merits. Jones filed a motion requesting de novo review of the magistrate judge's recommendations. The district court affirmed the magistrate judge on all grounds, except it reversed and granted habeas relief on Jones' <u>Faretta</u> claim. The court ordered the State to either release Jones or give him a new trial within ninety days. After the district court issued this order, the State filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, asking the district court to amend its judgment because Jones' <u>Faretta</u> claim was procedurally defaulted and, therefore, should only have been reviewed for plain error. The district court denied the State's motion, finding the State had waived any procedural default defense by failing to raise it and by solely addressing Jones' <u>Faretta</u> claim on the merits in its response to Jones' amended petition.

On March 12, 2010, the State filed a timely notice of appeal. On appeal, the State argues that Jones procedurally defaulted his <u>Faretta</u> claim and that the claim fails on the merits because the trial court's denial of Jones' motion did not violate clearly established Supreme Court law.

## II.   DISCUSSION

When reviewing a district court's decision to grant a petition for the writ of habeas corpus, we review its legal conclusions de novo and its factual findings for clear error.   Wilkins v. Bowersox, 145 F.3d 1006, 1011 (8th Cir. 1998).

### A.      Procedural Default

The State argues that Jones procedurally defaulted his Faretta claim because he did not include it in his motion for a new trial.  Jones argues that there was no procedural default because the Missouri Court of Appeals considered his Faretta claim on the merits.  The district court correctly concluded that the State waived any procedural default defense and, thus, we do not consider it.

When a state fails "to advance a procedural default argument, such argument is waived."  Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002).  Here, the State raised a procedural default defense in its response to Jones' original petition.  However, Jones subsequently filed an amended  petition, which wholly superseded his original petition.  The State was required to file a new response, and the magistrate judge expressly instructed the State that its response should identify any arguments regarding alleged procedural default.  The State's response did raise procedural default defenses to a number of Jones' claims, but not to his Faretta claim.  Rather, it specifically argued the Faretta claim on the merits.  The district court correctly concluded the State waived its procedural default defense.

Despite this waiver, the State requests we raise the procedural default issue sua sponte.  We have discretion to do so and have done so to correct an "obviously inadvertent" omission, King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001), or an "obvious computation error."  Day v. McDonough, 547 U.S. 198, 209 (2006).  However, this is not that type of case, and we decline to raise the issue sua sponte.

-6-

**B.    Merits**

On the merits, the district court concluded that the Missouri trial court violated clearly established Supreme Court law by relying on improper factors to deny Jones' request to represent himself.  In response, the State argues that the trial court properly determined that Jones' request to represent himself was not knowing and voluntary. We agree with the district court and find that the Missouri trial court violated clearly established Supreme Court precedent by relying on factors related to Jones' ability to represent himself, rather than limiting its analysis to whether Jones had knowingly and voluntarily waived his right to counsel.

Pursuant to the AEDPA, federal habeas relief is warranted only where a state court conviction either resulted in a decision that was "contrary to, or involved an unreasonable application of" clearly established federal law or where it rested on a factual determination that was unreasonable "in light of the evidence presented." Shafer v. Bowersox, 329 F.3d 637, 646 (8th Cir. 2003).  Clearly established federal law is found only in the decisions of the Supreme Court.  Id.

The parties agree that there is a clearly established Sixth Amendment right to self-representation.  The Supreme Court has long noted that "the Constitution does not force a lawyer upon a defendant." Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942).  In Faretta, the Supreme Court held that the Sixth Amendment gives a defendant the right to represent himself at trial, so long as he knowingly and voluntarily waives his right to be represented by counsel.  422 U.S. at 817-18. Relying on overwhelming historical evidence,  the Court concluded that the Framers "always conceived of the right to counsel as an 'assistance' for the accused, to be used at his option, in defending himself." Id. at 832. This right, grounded in the important constitutional value of autonomy, exists despite the fact that it is "undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." Id. at 834.

-7-

However, the right to self-representation is not absolute.  A request to proceed pro se is constitutionally protected only if it is "timely, not for purposes of delay, unequivocal, voluntary, intelligent and the defendant is competent." United States v. Maness, 566 F.3d 894, 896 (9th Cir. 2009), cert. denied, 130 S. Ct. 1716 (2010); see also United States v. Light, 406 F.3d 995, 999 (8th Cir. 2005).  Here, the trial court did not find, and the State does not argue, that Jones was not competent to waive his right to counsel.  Rather, the State argues that Jones did not, in fact, waive his right knowingly and voluntarily.  Thus, the issue on appeal is whether the State violated clearly established Supreme Court law by finding that Jones' request was not knowing and voluntary.

The key inquiry in determining whether a Faretta request was knowingly and voluntarily made is whether the accused was "'made sufficiently aware of his right to have counsel'" and "'of the possible consequences of a decision to forego the aid of counsel.'" Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1988) (quoting Patterson v. Illinois, 487 U.S. 285, 292 (1988)).  The amount of information a court needs to provide to a defendant and the amount of inquiry the court is required to make to test the defendant's understanding depends on the background, experiences, and conduct of the accused.  Johnson v. Zerbst, 304 U.S. 458, 464 (1938).  However, the relevant test is whether–given these factors–he had enough information to represent himself; a court is *not* permitted to consider whether–given these factors–a defendant could have ably defended himself.  See Godinez v. Moran, 509 U.S. 389, 399 (1993); United States v. Mendez-Sanchez, 563 F.3d 935, 945 (9th Cir. 2009) ("Faretta itself makes clear the view that self-representation in most cases will have negative consequences. But despite the potential ill-consequences of self-representation, we permit it because of our society's respect for individual dignity, once the individual has been fairly advised of consequences and has made a knowing and intelligent decision.") (citation omitted).  Here, under the guise of inquiring about the validity of Jones' waiver, the trial court improperly considered factors related to Jones' ability to represent himself.

Instead of using concerns about Jones' background and knowledge as a reason to more thoroughly warn Jones about the dangers of self-representation and probe more deeply to make sure he understood those warnings, the trial court used the concerns as a basis to deny Jones' request to represent himself. This was constitutional error.

The trial court's first ground for denying Jones' request to represent himself was that Jones was not familiar with the Missouri Rules of Criminal Procedure. Reliance on this factor was inappropriate. In Faretta, the Supreme Court held that a defendant's "technical legal knowledge" is irrelevant to whether his waiver of the right to counsel is voluntary. 422 U.S. at 835-36. Requiring a defendant to be familiar with the content of procedural rules at his initial Faretta hearing violates this principle. A court may–and in fact usually must–make a defendant aware of the expectations he will be held to if he represents himself Id. The court may not, however, independently consider whether the court believes the defendant will be successful in the face of those expectations when the court is determining whether the defendant's waiver is knowing and voluntary. Jones stated that he understood that the Missouri Rules of Criminal Procedure would govern his trial and that he would be expected to comply with them just as any formally trained lawyer would be. Although Jones conceded he had not yet learned the rules of procedure, his request to represent himself was made well before his trial was to begin and he had considerable time to familiarize himself with the rules if his request was granted. Requiring knowledge of the substance of the rules, rather than merely requiring understanding of their existence and importance, shifts the focus away from whether a defendant's waiver is informed toward whether the defendant is actually prepared to ably represent himself. This violates the defendant's Sixth Amendment right to represent himself if he knowingly and voluntarily chooses to do so, regardless of whether doing so is to his detriment. See United States v. Washington, 596 F.3d 926, 941-42 (8th Cir.), 131 S. Ct. 336 (2010); Lyles v. Estelle, 658 F.2d 1015, 1019 (5th Cir. 1981) (granting habeas where, inter alia, trial court refused defendant's motion for self-representation because of lack of "familiarity with the formalities of the rules of evidence and procedure").

The trial court also erred by using Jones' inability to state the exact range of penalties he faced on each count as a ground for finding his request was not knowing and voluntary. There is no indication in the record that Jones did not understand or was not capable of understanding the seriousness of the penalties that he faced, only that–well before trial, at a point where the State told the trial judge that it had not yet made recommendations about Jones' case because it was so "new"–Jones could not recall all of the specifics of the statutory penalty ranges. A defendant is required to understand the penalties he faces before he can waive his right to counsel. Shafer, 329 F.3d at 647. However, memorizing and understanding are not the same thing. This requirement puts a duty on the trial court to inform and to probe defendant's understanding, it does *not* allow the court to quiz a defendant and find his waiver involuntary or unknowing if he does not get it right on the first try. By doing the latter, the trial court committed constitutional error.

Similarly, the trial court's reliance on Jones' reduced ability to take trial notes violated clearly established Supreme Court law. Whether a defendant can take notes as fast as a lawyer might effect his ability to represent himself effectively, but it does not have any bearing on his ability to understand the consequences of waiving his right to counsel. Faretta makes it clear that the decision of whether to accept the disadvantages of self-representation lies with a competent defendant; the court can only evaluate whether a defendant actually has accepted those disadvantages with "eyes open." Adams, 317 U.S. at 279. The trial court was right to call to Jones' attention to the way Jones' physical impairment might affect his ability to represent himself, but the court crossed a constitutional line when it used this information about his physical infirmity to conclude that Jones did not knowingly and voluntarily elect to represent himself. Allowing a court to draw this type of inference–reasoning from the perceived disadvantages of a defendant's choice to represent himself to a conclusion that the defendant must not be making that choice voluntarily–would undercut the autonomy-protecting rationale of Faretta and conflict with clearly established Supreme Court law.

The trial court in this case was motivated by an understandable concern: it was worried that Jones would not be able to prepare himself sufficiently to participate in a fair and effective trial. To address its concern, the trial court could have taken the more moderate step of appointing standby counsel–to assist Jones without compromising his ability to perform the essential functions of conducting his own defense. McKaskle v. Wiggins, 465 U.S. 168, 174 (1984). Further, if the trial court had allowed Jones to proceed pro se and he had been unable or unwilling to conduct his own defense without disrupting the essence of the trial process, the court would have had the authority to revoke Jones' right to represent himself. See Illinois v. Allen, 397 U.S. 337, 343 (1970). However, under clearly established Supreme Court precedent, denying a defendant's right to represent himself is not a permissible response to this concern. The trial court–understandably concerned about the difficulties of allowing Jones to represent himself in the face of a complex legal system and serious charges–nonetheless violated the clear mandate of Faretta that it "is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage." 422 U.S. at 834.[3]

---

[3]Any attempt by the State to rely on the Supreme Court's recent decision in Indiana v. Edwards, 554 U.S. 164 (2008), is misplaced. Edwards–which, in any case, was not handed down until several years after the trial court denied Jones' request to represent himself–did not address the "knowing and voluntary waiver" requirement that is at issue here. Rather, Edwards involved a defendant who: (1) the Court determined was competent to waive his right to counsel and (2) the Court determined had, in fact, knowingly and voluntarily done so. Id. at 170-71. The Edwards Court held that a state was permitted to conduct a separate inquiry about whether that defendant was competent to actually represent himself. Id. at 174-75. Here, the trial court's order denied Jones' request based on the inadequacy of his waiver and not based on concerns about his competence to represent himself. Edwards affirmed rather than changed Faretta's clearly established rules on waiver. Id. Further, Edwards suggests that even the self-representation-competency evaluation a trial court is allowed to conduct is narrowly limited to mental competence; the Edwards Court held only that a state can insist on representation for defendants who are

## III.  CONCLUSION

For the foregoing reasons, we affirm.

_____

competent to stand trial but who still suffer from "severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." Id. at 178. Neither Edwards nor any other precedent empowers a trial court to conduct a searching inquiry into a defendant's ability to successfully represent himself before allowing him to proceed pro se.  Washington, 596 F.3d at 942 ("Thus, [defendant's] lack of understanding of court procedures, in and of itself, does not suggest his incompetence to proceed pro se.").